MARIETTA BRADY

v.

CYRUS J. COLE et al.

*Filed at Ottawa November 23, 1896.*

1. NOTICE—*grantee must take notice of terms of his deed.* Unless a grantee in a deed is prevented from knowing its terms by the fraudulent act of the grantor, he must take notice of such terms and is bound by them.

2. FRAUD—*what statements are mere matters of opinion.* Statements made by a real estate agent to a widow to induce her to exchange her homestead for other property, that she was making a good trade and bettering her condition, and that she could sell enough of the other property to pay for a house, are merely expressions of the agent's opinion, and not representations.

3. SAME—*when conveyance will not be set aside for misrepresentation.* Upon an exchange of properties equity will not set aside the conveyance at the instance of one party for misrepresentation, unless the misrepresentation is of an existing, material fact, and made by the other party, or with his knowledge and consent, for the purpose of and which succeeds in inducing the former to act.

4. RESCISSION—*upon rescission parties should be placed in statu quo.* A party to a contract, upon discovering fraud, should at once rescind the contract and tender back what he has received thereunder, so as to place the parties, as nearly as possible, *in statu quo.*

5. ACKNOWLEDGMENT—*notary's certificate to deed can be impeached only for fraud.* To impeach a notary's certificate to a deed the evidence must be clear that the certificate is untrue and fraudulent, and the evidence of the party purporting to have made the acknowledgment is not sufficient, even with slight corroboration.

APPEAL from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

A bill in chancery was filed by appellant in the circuit court of Peoria county seeking to set aside certain conveyances of real estate made by her, on the ground of false and fraudulent misrepresentations made to her, and also to have declared void a notary public's acknowledgment to a deed conveying her homestead.

In September, 1893, appellant was the owner in fee of lot 22 in Proctor & Stone's addition to Peoria, subject to

a mortgage of $600, which lot was occupied by her as a homestead for herself and family. She alleges in her bill that she was solicited by Cole, a real estate agent, to exchange her property for a certain other larger tract in Geiger's subdivision; that it was of a certain value, and that he could procure a contract to build her a house on the land by a contractor who would take two lots off the tract in payment, and in the end she would not be compelled to make any greater payment or outlay of money than the amount of $600 for which she was already liable on her homestead. The advantages of the entire transaction were presented to her in glowing terms by Cole, and she promptly authorized him to act as her agent in the consummation of the deal. One of the appellees, C. T. Heald, held the title to the tract in Geiger's subdivision, but when Cole made application for an exchange it was declined, on account of the value placed by Mrs. Brady at that time on her homestead. Subsequently Cole represented to her that he could exchange her property for a lot owned by one of the appellees, John E. Goodrich, and known as the "Barker avenue lot," and that he could then exchange that for the Geiger tract. She assented to this, and went to Goodrich's office, where she executed a deed to him for her homestead and in return received a deed for the Barker avenue lot. The record very clearly shows that the equity of each property was about the same. Goodrich at that time asked if Mrs. Brady fully understood the matter, and Cole responded for her that she did. Goodrich himself took Mrs. Brady's acknowledgment to the deed in which he was grantee. A short time afterwards, Cole, who had an option on the Geiger tract, procured a deed from Heald and conveyed it to Mrs. Brady. Heald knew that Cole was trading with Mrs. Brady, and received as part of the purchase price from Cole a mortgage from Mrs. Brady and also her equity in the Barker avenue property. Cole gave attention, apparently, to most of the business for

Mrs. Brady and negotiated for the building of a house. A proposition was made by Yeager, a contractor, to build it, which was accepted by Mrs. Brady in writing. The house was built but not paid for, and was subsequently sold under a decree for a mechanic's lien and bought in by Heald, who held a mortgage for part of the purchase price. Attention being subsequently called to the fact that the acknowledgment of the deed from Mrs. Brady to Goodrich was imperfect, from the fact that it had been taken by Goodrich himself, Mrs. Brady caused to be filed and recorded a notice stating that she was the owner in fee of lot 22, in Proctor & Stone's addition, and that the deed from her to Goodrich, dated in September, 1893, was obtained through fraud and was void. Thereupon Goodrich took steps to have the acknowledgment corrected, and, together with Cornwell, his attorney, and Frey, a notary public, called upon her for the apparent purpose of getting a new acknowledgment. The testimony as to what occurred at this interview is somewhat conflicting, but the weight of the evidence establishes that Frey was introduced as a notary and that Mrs. Brady said that she had signed the deed waiving her homestead. At that time she seemed to find no fault with Goodrich, but said he had acted gentlemanly, but that Cole had taken some advantage of her. At that time it was proposed to Mrs. Brady, that, as to the exchange between her and Goodrich, if she would deed him back the Barker avenue property he would reconvey her homestead. However, based on this interview, a new certificate of acknowledgment was made by Frey, as notary, on the deed from Mrs. Brady to Goodrich.

The prayer of the bill is, to have all the conveyances set aside on the ground of fraud and collusion in depriving appellant of her homestead property, or in default of that, that the acknowledgment of the deed to Goodrich be set aside and she be declared to have not waived her homestead right in the property. On a hearing in

the circuit court a decree was entered dismissing the bill, from which decree this appeal is prosecuted to this court.

W. T. WHITING, for appellant.

HAMMOND & WYETH, and WINSLOW EVANS, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

There are two questions presented in this case for the consideration and determination of this court, being, in substance, whether there were such fraudulent misrepresentations made to appellant, of which appellees Goodrich and Heald had notice, to induce her to make these exchanges of property, as would call upon a court of equity to set aside the conveyances; and also whether or not the second acknowledgment of the Goodrich deed was obtained by fraud, or whether there was, in law, a proper acknowledgment.

A misrepresentation, in order to constitute fraud, must be made for the purpose and with the design of procuring the other party to act,—of inducing him to enter into the contract or engage in the transaction. (Pomeroy's Eq. sec. 879.) It can hardly be contended by appellant, and, in fact, we think is not, that any misrepresentations were made to her by either Goodrich or Heald. On the contrary, she did not have any conversation with either before the transaction was practically consummated. She called at the office of Goodrich with her agent for the express purpose of deeding him her homestead and receiving his lot in exchange. The extent of the conversation, as appears from this record, was, that he asked if she fully understood the matter, and then, if she had time, to wait while he prepared the deed. She alleges she did not have knowledge of the incumbrance on his lot or of the special tax. Both were clearly expressed in the deed which was delivered to her, and it was incumbent

on her to take notice of its conditions.   Unless it appears that by the fraudulent acts of the opposite party she was prevented from knowing the conditions and terms of the instrument .accepted by her, she is bound by them.   It appears, however, from the evidence, that the value of the Goodrich property, after deducting the mortgage and tax, was so nearly equal to the value of her own property above the incumbrance that she was not in any way defrauded in value.

If no misrepresentations were made directly to appellant by appellees Goodrich and Heald before the transaction, then it must sufficiently appear that such representations were so made by Cole for the purpose and with the design of inducing her to act and engage in the transaction, and that such misrepresentations were known to Goodrich and Heald and participated in and taken advantage of by them.   It is not sufficient that Cole made statements that she was making a good trade and bettering her condition, and that she could sell enough lots off the tract of land purchased by her to pay for her house.   Those statements were mere matters of opinion, and the mere expression of an opinion held by a party cannot, standing alone, be held a misrepresentation.   The statement must be the affirmation of a fact. (*Hubbell* v. *Meigs*, 50 N. Y. 480.)  The reason of this rule is, that while the person to whom the representations are made has a right to rely on them, he is assumed to be equally able, from his own opinion, to come to as correct a conclusion as the other party, and therefore cannot claim to be misled by such opinion.   Promises for the future and hope of realizing speculative profits are not present fraud.   It must be of a fact at the time or previously existing.   *Long* v. *Woodman*, 58 Me. 49; *Bevit* v. *Bowles*, 69 Ind. 1; *Fontz* v. *Fontz*, 34 id. 433; *Bethell* v. *Bethell*, 92 id. 318.

As we have heretofore said, the deal between Mrs. Brady for her homestead and Goodrich for the Barker

avenue property was in no sense unfair, as the record shows the equities were nearly equal. Cole held an option on the Geiger tract, and afterwards made the conveyance himself to appellant. Courts of equity do not aid parties who do not use their own discretion and judgment upon matters of this character. *Tuck* v. *Downing,* 76 Ill. 71.

As we view this matter, from the record presented to us, it was not of a character different from an ordinary business transaction. Heald was not willing to use appellant's homestead property at the value fixed on it in exchange for the Geiger tract, but, when the matter was suggested, agreed to take the equity in the Barker avenue lot. Appellant then, voluntarily and without misrepresentation on the part of Goodrich, traded for his property and was not defrauded. She then exchanged with Cole for the Geiger tract, which he acquired from Heald; but the promises and predictions made by Cole as to the sale of lots off that tract, and other promises made by him, were not consummated, and the exchange resulted unfortunately.

Fraud is never presumed. It must be affirmatively shown, like any other fact. (*Wright* v. *Grover,* 27 Ill. 426; *Boies* v. *Henney,* 32 id. 130; *People* v. *Lott,* 36 id. 447; *Carter* v. *Gunnels,* 67 id. 270; *Schroeder* v. *Walsh,* 120 id. 403.) It was not so shown in this case, and it was not error for the circuit court to so hold. Moreover, it was the duty of the appellant, if she was entitled to a rescission of these conveyances, to have tendered back what she had received and offered to place all parties *in statu quo.* It is a familiar rule, and settled by a long line of authorities, that where a party discovers that fraud has been practiced upon him in the making of a contract, it is his duty at once to repudiate the contract and tender back what has been received by him under its terms, so that all the parties may be placed, as near as possible, in the position occupied before the contract was consummated.

(*Linington* v. *Strong*, 107 Ill. 295; *Dowden* v. *Wilson*, 108 id. 257; *Kelsey* v. *Snyder*, 118 id. 544; *Greenwood* v. *Fenn*, 136 id. 146; *Brown* v. *Brown*, 142 id. 409; *Day* v. *Fort Scott Investment Co.* 153 id. 293.) In this case such rule was not followed, only the mere allegation being made in the bill that appellant was, and had been at all times, ready to reconvey the property. This was not sufficient. Goodrich had proposed, if she was dissatisfied, to reconvey if she would deed him back the Barker avenue lot.

It is contended, however, that even though the proof be not sufficient to authorize a decree setting aside these deeds and rescinding the different transactions, this court should still declare the acknowledgment to the Goodrich deed taken by Frey to be void and not to waive homestead, and that appellant be permitted to retain her homestead interest therein. The circumstances attending the taking of this acknowledgment are not entirely clear, owing to the conflict in the testimony of the different parties. The first acknowledgment had been taken by Goodrich, the grantee. The evidence establishes that at the time he, together with Cornwell and Frey, called upon appellant she admitted the signature to the deed to be hers and that she had given it in good faith to Goodrich, and at the time it was given to him she intended to convey to him her homestead interest. She said she had since understood there was an error in the acknowledgment and had given notice that the deed was void. The certificate of Rudolph Frey, the notary, shows that this deed was acknowledged before him on this date, together with a release and waiver of the rights of homestead.

It is a rule that the acknowledgment of a deed cannot be impeached for anything but fraud, and in such cases the evidence must be clear and convincing, beyond a reasonable doubt. The mere evidence of the party purporting to have made the acknowledgment cannot overcome the officer's certificate, nor will it with slight corroboration. (*Russell* v. *Baptist Theological Union*, 73 Ill. 337.) "To

impeach such a certificate the evidence should do more than produce a mere preponderance against its integrity in the balancing of probabilities. It should, by its completeness and reliable character, fully and clearly satisfy the court that the certificate is untrue and fraudulent." (*Monroe* v. *Poorman*, 62 Ill. 523; *McPherson* v. *Sanborn*, 88 id. 150; *Marston* v. *Brittenham*, 76 id. 611.) The authorities very clearly lay down the rule that evidence offered to impeach a certificate of this character must fully and clearly satisfy the court that the certificate of the officer is false and fraudulent, and even a preponderance of evidence less than sufficient to establish a moral certainty to that effect is not sufficient. In this case the certificate of the officer is supported by his own testimony and that of two other witnesses, (one of them the grantee,) as against the testimony of appellant, the grantor, (an interested party,) and another witness, Mrs. Dikeman, whose evidence, however, is not very satisfactory. Taken as a whole, the evidence offered to impeach this certificate is not of that clear and convincing character required by the rule as heretofore shown to exist. Moreover, we have heretofore held in this case that the exchange of properties between appellant and Goodrich, involving this deed, was valid and free from any taint of fraud. To now hold that she is entitled to an estate of homestead in this property, without requiring her to deed back to Goodrich the property acquired from him, would be manifestly unjust and not in accordance with the principles of a court of equity. It would materially decrease the value of the property conveyed to him. Appellant practically admits she cannot place him *in statu quo*, having conveyed and disposed of the property she acquired from him. The acknowledgment was valid.

It was not error in the circuit court to enter a decree ordering the bill of appellant to be dismissed, and such decree is accordingly affirmed.    *Decree affirmed.*