BENJAMIN WENEGAR

*v.*

EDWARD BOLLENBACH.

*Opinion filed June 17, 1899.*

1. FRAUD—*when equity will set aside a deed for false representations.* Equity will set aside a quit-claim deed where the grantor, who resided at a distance from the property, was ignorant of its value and his interest therein, and was hurried into making the deed by the false representations of the grantee as to such matters, made with knowledge of their falsity and by which he gained the grantor's interest at a fraction of its worth, giving his note in payment.

2. TENDER—*what a sufficient offer to return consideration.* A grantor who, by his bill to set aside his deed, offers to return the note given for the purchase money, and who again offers in open court to return the note, shown to be in possession of his attorney then in court, sufficiently complies with the rule relating to the return of consideration upon rescission of a contract of sale.

. 3. EVIDENCE—*when original bill is not admissible against the pleader.* An unsworn bill drawn by an attorney under a misapprehension of the facts, which bill has been superseded by an amended bill, is not admissible to prove admissions therein contained, alleged to be in contradiction of the amended bill.

APPEAL from the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding.

This is a bill, filed by the appellant against the appellee for the purpose of setting aside a quit-claim deed, executed by the appellant to the appellee on or about September 6, 1897. The original bill was filed on February 2, 1898, and the amended bill on May 31, 1898. By the quit-claim deed in question appellant conveyed to appellee his interest in a farm of one hundred and sixty acres of land in Henry county, Illinois. The ground, upon which it was sought to set aside the deed, was that the appellee had made to appellant false and fraudulent representations and statements regarding the value of the land, the value of appellant's interest therein, the amount and character of such interest, and the extent to which

appellant's said interest was in danger of being lost to him. The answer filed to the amended bill by the appellee denied the charges of fraud and misrepresentation made in the bill. Upon hearing had, the circuit court, by decree entered on July 12, 1898, found the issues for the appellee, the defendant below, and dismissed the bill of appellant, the complainant below, with costs of suit. The present appeal is prosecuted from the decree so entered by the circuit court.

One Magdalene Weiskopf was, in her lifetime, the owner in fee of the one hundred and sixty acres in question, and died intestate on August 29, 1897, leaving surviving her no husband, nor children, and leaving, as her only heirs-at-law, her brother, Mathew Wenegar of Tamora, Nebraska, her sister, Barbara Bollenbach, mother of appellee, and wife of Charles Bollenbach, and her nephew, the appellant, Benjamin Wenegar, who was the only child of her deceased brother, Jacob Wenegar. Magdalene Weiskopf had become the owner of eighty acres of the land, as devisee under the will of her deceased husband, Jacob Weiskopf, who died testate in 1882. His estate was duly administered upon and fully settled in the probate court of Henry county, where his will was admitted to probate. The other eighty acres she acquired herself by purchase after the death of her husband. By the death of Magdalene Weiskopf, her brother, Mathew Wenegar, her sister, Barbara Bollenbach, and her nephew, Benjamin Wenegar, the appellant, being her only heirs-at-law, became each seized in fee, by inheritance from her, of an undivided one-third of said one hundred and sixty acres. There is no dispute between the parties as to the interests inherited from Magdalene Weiskopf, as above stated.

TURNER & STREED, for appellant.

GRAVES & BROWN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The appellant and the appellee are first cousins, the deceased father of the appellant having been a brother of the appellee's mother. Appellant, at the time of the transaction herein narrated, was only twenty-two years old, and was a carpenter by trade, living at Palatine in the county of Cook. His aunt, Mrs. Weiskopf, lived, at the time of her death, in Henry county near a place called Hoop Pole. Her nephew, the appellee, had lived in Henry county, and had worked on his aunt's farm there, and knew its value. Charles Bollenbach lived at Long Grove in Cook county, Illinois.

On September 6, 1897, appellee approached appellant upon the road near Palatine, and offered to purchase his interest in the estate of their aunt, Mrs. Weiskopf, who had died in Henry county a week before that time. Appellant swears, that he knew nothing about the farm left by his aunt, and knew nothing about the extent of his interest therein. He swears, that appellee represented appellant's interest or share in the farm to be one-twelfth. The substance of his testimony is, that such interest was represented to him to have been acquired through the will of the deceased husband of Mrs. Weiskopf. According to the testimony of appellant, appellee represented that Jacob Weiskopf, in his will, had left the land to his wife, Magdalene Weiskopf, for her life, and at her death that it was to go to her nephews and nieces, or to her brother and sister and their children. Mathew Wenegar had five children, Mrs. Bollenbach had four children, and appellant was the child of a deceased brother, thus making ten nephews and nieces. There is some uncertainty in the testimony of appellant, owing to his want of knowledge on the subject of legal heirship and the laws of descent, as to whether the land was represented as belonging to twelve nephews and nieces of Mrs. Weiskopf,

or to her brother and sister and her ten nephews and nieces. Whether the one statement or the other is correct, it clearly appears from the evidence of appellant that his own interest was represented to be one-twelfth. He also swears, that appellee stated to him, that the other heirs would make an effort to deprive him of his interest. His testimony also is, that appellee represented the farm to be worth about $35.00 an acre, or $5600.00 for the whole of the one hundred and sixty acres; that his interest was stated to be one-twelfth of $5600.00, that is to say, about $466.00.

It is quite clear from the proof that appellee, a young man about twenty-four years of age, was sent to the appellant to obtain the latter's interest in the land by Charles Bollenbach, the father of appellee. The appellant further states that, relying upon the representations of his own cousin, that his interest in the land was only one-twelfth and was worth only $466.00, he agreed to sell such interest to appellee for $466.00. When appellee approached appellant, he had in his possession a quit-claim deed partially made out, that is to say, with the description of the land inserted in it. Appellee agreed to give the appellant a note for $466.00, signed by himself and a brother of his, named Louis Bollenbach, payable one year after date. After making the agreement aforesaid, appellant and appellee went to the office of a justice of the peace and notary, named George C. Whipple, in Palatine, and requested him to finish the draft of the quit-claim deed, and take appellant's acknowledgment thereto. Appellee went the next morning to Louis Bollenbach, who lived six miles distant in Lake county, and obtained his signature to the note. Whipple had an office in Chicago, as well as in Palatine, and stated that he would have to go to Chicago to put his seal upon the acknowledgment. Appellee went with him on the cars to Chicago, and the acknowledgment was completed by putting the notarial seal thereto.

If the testimony of the appellant is true, appellee made a false statement in regard to the extent of appellant's interest in the property, as he was entitled to one-third thereof as heir of Mrs. Weiskopf. Appellee denies, that he made any such representations, as are sworn to by the appellant. Appellee states, that he told the appellant, that the latter was the owner of an undivided one-third of the property, but that there were certain claims against the estate, the largest of which was held by his father, Charles Bollenbach, and that, if these claims were proved up against the estate, the whole value of the property, after their payment, would be only about $1400.00, and that one-third of this, to-wit, $466.00 or thereabouts, was the total value of appellant's interest. It is nowhere explained how such a figure as $1400.00 could be obtained under the evidence, or under any theory advanced by either side in the case.

Appellant is sustained in what he says by the testimony of Whipple. Whipple swears that, when appellant and appellee were with him in his office in Palatine, appellee made the representations, which are sworn to by the appellant, and that he made the same representations to him (Whipple) while they were going together on the train from Palatine to Chicago. Whipple states, that he was surprised at the character of the will, as it was represented to be by the appellee, and asked him why Jacob Weiskopf should have given the property by his will to his wife's relations, instead of his own relations. He also states, that he communicated his impressions in regard to the matter to the appellant. After appellee had delivered the note to appellant, and had obtained the deed, and gone away, appellant's suspicions were aroused in regard to the matter, and, at his request, Whipple wrote to the clerk of the probate court in Henry county, and obtained a copy of Jacob Weiskopf's will; and it was ascertained that, therein, Jacob Weiskopf had left all his property to his wife, so that she was, at his death, the

owner thereof in fee.   Thereupon, Whipple prepared for
appellant a deed of revocation, which is in the record,
and bears date October 2, 1897, less than a month after
the making of the deed sought to be set aside.   This
deed of revocation recites the execution of the quit-claim
deed by appellant to appellee on September 6, 1897, and
states that the same was executed by and through the
fraud and false statements and representations, made by
Edward Bollenbach, and that, because thereof, the said
quit-claim deed was thereby recalled, revoked, remanded,
annulled and made void.   This deed of revocation was
signed by Benjamin Wenegar, and acknowledged by him
before Whipple on October 2, 1897, and was recorded in
the recorder's office in Henry county on October 5, 1897.
The evidence shows that, after the recording of the latter
deed, Charles Bollenbach and his son made advances to
the appellant with a view of settling the matter, but no
settlement was made; and the original bill herein was
filed, as before stated, on February 2, 1898.

The testimony of the appellant is not only confirmed
by the positive evidence of Whipple, but by some very
significant circumstances.   The fact that, within a few
days after the execution of the quit-claim deed by appel-
lant to appellee, a copy of the will of Jacob Weiskopf
was obtained by Whipple and the appellant from Henry
county, shows that there must have been some represen-
tation in regard to the contents of the will.   As matter
of fact, Mrs. Weiskopf died intestate and the owner in
fee of the whole of the one hundred and sixty acres, and
the contents of the will would appear to have been im-
material, except as bearing upon some of the statements
alleged to have been made by the appellee.   Again, the
amount of the note, $466.00, corresponds with the state-
ment of the appellant, when he says that his interest was
represented to him to be one-twelfth of the property, be-
cause $466.00 is about one-twelfth of $5600.00, which, as
he says, was the value of the property, as it was repre-

sented to him by the appellee. Counsel for the appellee state, in their brief, that Charles Bollenbach "informed his son, Edward, the appellee, that, if he would buy the interests of appellant and Mathew Wenegar in the estate, he, Charles Bollenbach, would not present his claims against the estate, whereupon appellee went to appellant and told him the foregoing facts, and said to him that he, appellee, could afford to give him, appellant, more than any one else could for his interest in the estate, because of the arrangement with Charles Bollenbach not to present his claims against the estate, if appellee bought the interests of Mathew Wenegar and appellant." Appellant was thus induced to believe, that his uncle, Mathew Wenegar, was selling out his interest at the same figure, at which appellant was requested to part with his own interest. The proof, however, fails to show, that the interest of Mathew Wenegar was obtained at the same figure at which appellant's interest was obtained, or that it was obtained at any figure at all. On the contrary, William Wenegar, the son of Mathew Wenegar, has given testimony in the case, tending to establish the invalidity of the greater portion of the claim set up by Charles Bollenbach against the estate of Mrs. Weiskopf.

After a careful examination of all the evidence we are of the opinion, that the great preponderance thereof is in favor of the contention made by the appellant in this case, and that the finding of the court below is against the weight of the evidence. But suppose that we are mistaken in this conclusion, and that the statements of the appellee are to be taken as correct. Even in such case this deed, for which nothing was paid except a note of doubtful value, ought to be set aside.

The evidence shows clearly, and counsel for appellee in their brief admit, that this land was worth at least $36.00 per acre, or $5760.00. Some of the witnesses put the value as high as $50.00 an acre, or $8000.00. If, however, it was only worth $5760.00, appellant's interest in

it was worth $1930.00, whereas he received only a note for $466.00 due in one year. The theory, however, of the appellee is, that there were claims against the estate of Mrs. Weiskopf of such large amount that, if they had been proved up, the excess in the value of the land over their amount would have amounted to but little. The proof shows, that there were a few small claims against the estate, but that there was personal property enough or nearly enough to pay these claims. The only other claim is that set up by Charles Bollenbach. He says that his wife's sister, Mrs. Weiskopf, was an invalid, suffering with catarrh in the head, or some other disease, and that she stayed at his house during the latter part of her life, instead of living upon her farm, in order to be near Chicago and thereby get medical attendance. His testimony is, that she stayed at his house during the last three years of her life. William Weneger contradicts this statement by saying that he lived in the neighborhood of his aunt's farm during the last three years of her life, and that she was on the farm during the whole of eight or nine months during each one of these years. But admit that Charles Bollenbach's evidence is correct, and that she did live with him, and that he boarded her during the last three years of her life. The appellee swears, that his father's services for taking care of his aunt during these three years were worth about $1000.00 a year, which would be $3000.00 for the whole time. If this amount be taken from the value of the land, $5760.00, there would remain $2760.00, one-third of which is $930.00, or about double the amount of the note, which appellee gave to appellant. It is true, that Charles Bollenbach represents his claim against the estate to be about $6500.00, but he states no basis for any such claim, nor explains how it is made up, nor does he agree with his son, the appellee, in regard to the value of his services in taking care of Mrs. Weiskopf. The only claim, which, according to the evidence of the appellee, could have been presented

or might have been presented against the estate of his aunt was this claim of his father, which, as he swears, could not have exceeded $3000.00.

It is true, that appellee refers to some claim that he may have put in against his aunt's estate on account of work done by him for her upon her farm. He states, however, that he worked for her on the farm for four years from the time he was fourteen years old to the time when he was eighteen years old. But he also states, that he left her service at the age of eighteen years, which was six years prior to the time of giving his testimony; so that, if he had any claim against the estate, it was barred by the Statute of Limitations at the time of his aunt's death.

It is to be remembered that no claims of any kind were ever presented or allowed against the estate of Mrs. Weiskopf. Indeed, no administration was ever taken out upon her estate; and Whipple swears, that the appellee told him, that there were no claims against the estate, and that the county judge in Henry county said that, for this reason, it was not necessary to take out letters of administration. Therefore, whether any claims would in the future be allowed in favor of Charles Bollenbach against the estate, and what the amount of such claims would be, if allowed, were matters altogether problematical and uncertain.

Whether, therefore, the representations, to which the appellant swears, are true, or whether the representations, to which the appellee swears, are true, in either case, this young man's interest in this land was obtained from him at a figure, which was grossly inadequate. Unquestionably, mere inadequacy of price will not justify a court in vacating a sale, unless the inadequacy is such as to amount to evidence of fraud. The evidence satisfies us that, here, it does amount to evidence of fraud. It has been said that, if there is nothing but mere inadequacy of price, the case must be extreme, in order to

call for the interposition of equity; but, when the inadequacy does not thus stand alone, but is accompanied by other inequitable incidents, the relief is much more readily granted. (2 Pomeroy's Eq. Jur. sec. 928). Here, as has already been shown, the inadequacy of price is accompanied by other inequitable incidents. The representations made to the appellant as to the extent of his own interest, if his testimony is true, or as to the amount of the claims against the estate, if the testimony of the appellee is true, are matters of fact, and, therefore, come within the rule that in order to set aside a deed, procured by fraudulent representations, such representations must be as to matters of fact. (*Dillman* v. *Nadlehoffer*, 119 Ill. 567; *Fish* v. *Cleland*, 33 id. 238). The appellant had not been in Henry county, and did not know how his aunt acquired her title to the property in Henry county, and did not know the terms of the will of her deceased husband; whereas the appellee was informed in reference to those matters by reason of his residence in Henry county. The sale of the property was made at a distance from it, so that the appellant had not the means of ascertaining the truthfulness of the appellee's representations and was hurried into the execution of the deed without being given an opportunity to make appropriate investigations. The appellant approached him with a deed already partially executed, and urged upon his attention the efforts that were about to be made by the other heirs of his aunt to deprive him of his interest. He hurried to Louis Bollenbach at once to get the note signed, and would not permit the notary to go to Chicago to put the seal on his acknowledgment without following him, and getting possession of the deed there. When a sale is thus made of property at a distance, so that the seller has not the means at hand of ascertaining the truthfulness of the representations made to him, he may rely upon their truth, and have redress, if they are shown to be materially false. (*Borders* v. *Kattleman*, 142 Ill. 96; 2 Pomeroy's Eq. Jur.

sec. 98). The representations, to constitute fraud, must be relied upon by the person, to whom they are made, and whose action it is intended to influence. (*Tuck* v. *Downing*, 76 Ill. 71). The representations so made must be known to be false by the person making them. (*Holdom* v. *Ayer*, 110 Ill. 448). It cannot be doubted from the testimony in this record, that the representations made to the appellant were relied upon by him, and that they were known to be false by the appellee when he made them. It is said, that the person, to whom false representations are made, must be injured by their want of truthfulness. (*Bartlett* v. *Blaine*, 83 Ill. 25). The appellant was certainly injured by the representations, when he parted with his interest in the property for half of what it was actually worth.

It is said by counsel for appellee, that appellant has not in any way attempted to place appellee *in statu quo* by returning to appellee or tendering to him the note given for the purchase of his interest in the land. Undoubtedly a party, who attempts to rescind a contract for fraud, must first place the other party *in statu quo;* (*Brady* v. *Cole*, 164 Ill. 116); and in the latter case it was said, that it was insufficient merely to allege in the bill, that the complainant was and had been at all times ready to reconvey the property, or return the consideration, or purchase money. Here, however, not only does the bill offer to return the note, but the testimony shows that the appellant, while upon the witness stand, offered in open court to return the note, which was shown to be in the possession of his attorney then present in court. We think that this was a sufficient compliance with the rule laid down in *Brady* v. *Cole,* *supra*.

Many of the rulings of the trial court upon the admission and exclusion of evidence are complained of by the appellant. We cannot refer to all these rulings, but think that some of them were erroneous. The appellee offered in evidence the original bill, filed by the appellant in

this case on February 2, 1898, as containing admissions, alleged to be contradictory of the allegations in the amended bill. The proof shows, that the original bill was drawn by an attorney in Henry county four months after he had taken a memorandum of the facts given him as a basis for drawing the bill; and that, when he sent a copy of the bill to appellant, appellant complained that he had not alleged the facts correctly. The original bill was not sworn to by the appellant. We do not think that, where an amended bill has been filed, the original bill filed in the same suit, if not sworn to, ought to be introduced in evidence against the complainant therein. Many cases are cited by counsel where a bill or answer or other pleading has been admitted in evidence against one of the parties to the suit, as containing admissions by him opposed to the facts sought to be established in the cause on trial. But it will generally be found, that such cases are those, where the pleading introduced was filed in some other suit than the suit on trial. The learned author of the article on "Evidence" in the Encyclopædia of Pleading and Practice says: "The conflict of authority as regards the admissibility of an original pleading, which has been superseded by amendment, renders the statement of a settled rule impossible. The majority of the decisions hold, that such a pleading, duly verified, when necessary, is admissible in evidence as proof of the admissions made therein by the pleader. But the contrary view has been sanctioned by the courts in several of the jurisdictions in the United States." (8 Ency. of Pl. & Pr. p. 27). Here, the original bill was not verified, but was prepared by an attorney who either misunderstood, or had forgotten, the facts as stated to him by his client. The allowance or disallowance of amendments to pleadings is, as a general thing, discretionary with the court, but, after their allowance, the pleadings stand, as amended, in the place of, or supplemental to, those originally filed. "The object of amendment is to correct

mistaken, improvident or imperfect allegations, and to allow the pleader to stand on grounds better considered." If a party so amends his pleadings as to state the facts differently, he would derive no benefit from his amendment, if the adverse party were at liberty to use the first pleading as an admission to overthrow the amended pleadings. (*Holland* v. *Rogers*, 33 Ark. 251; *Mecham* v. *McKay*, 37 Cal. 154). Without definitely laying down the rule, that an original pleading, which has been supplanted by an amended pleading, cannot be introduced in the same suit where both have been filed, as evidence of admissions made by the pleader, where such original pleading is verified by the oath of the party himself, we yet are of the opinion that when such pleading is not sworn to by the party, and is prepared by his attorney under a misapprehension of the facts, as the evidence shows to have been the case here, such original unsworn pleading ought not to be admitted in evidence against the pleader. Hence, the court below erred in giving weight to the alleged admissions, supposed to be contained in the original bill filed in this case.

The court also permitted Charles Bollenbach to state a conversation that he had with the appellee, his son, in regard to his claims against the estate of his wife's deceased sister, which conversation occurred in the absence of the appellant. In our opinion, it was error to admit in evidence such conversation under the circumstances. Other rulings were made, which seem to us to have been unfair to appellant, but we forbear to comment further.

The decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*