## William H. Swanson, Appellee, v. C. B. Fisher, Appellant.

### Gen. No. 15,564.

1. FRAUD—*when equity will not set aside lease.* Equity will not decree the setting aside of a lease upon the ground that it was obtained by fraud and misrepresentation as to the condition of the premises demised, where, by the terms of the lease, it appears that the lessee took the premises in the condition in which they were at the time of such demise.

2. FRAUD—*what waiver of.* Alleged fraudulent misrepresentations inducing the execution of a lease are waived by the lessee if he enters into possession and pursuant to the terms of the lease proceeds to repair and use the same.

3. FRAUD—*what does not constitute.* Misrepresentations as to mere matters of opinion do not constitute such legal fraud as will justify a court of equity in setting aside a contract.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding. Heard in this court at the March term, 1908. Reversed. Opinion filed April 12, 1909.

HOYNE, O'CONNOR, HOYNE & IRWIN, for appellant; CARL J. APPELL, of counsel.

DOUGLAS C. GREGG, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from an interlocutory injunctional order granted without notice.

Appellant leased to appellee, a thoroughly experienced theatrical man, the Lyceum Theatre in Springfield, Ohio. The lease was made and entered into in Chicago. Appellant sued appellee for unpaid rent, in the Municipal Court of Chicago. Whereupon appellee thereafter filed this bill to restrain the prosecution of that suit and for a cancellation of the lease, on the ground that his execution of the same was procured by fraudulent representations.

The bill avers, *inter alia,* after setting forth the lease

in *haec verba*, that appellant represented that the theatre was first-class in every respect and was the best located of any theatre in Springfield and that it had been in constant use as a "Stock Company theatre," that it was in first-class condition and ready for immediate occupancy and use as a theatre; that appellee knew nothing in relation to said theatre except as disclosed by these representations of appellant, and that he relied upon their verity in executing the lease; that appellee thereafter discovered that the theatre was not in the condition represented, that it was unsanitary, out of repair and had been condemned by the municipal authorities as unsafe from the standpoint of fire and sanitation; that appellee repaired the theatre, putting it into a sanitary condition and complying with the municipal regulations sufficiently to permit of his opening the same as a theatre in October; that appellee operated the theatre from the time he opened it until the 25th of November following, when he closed it because and owing to the reputation, location and surroundings of the said theatre it was impossible for him to operate the same, notwithstanding his wide experience as a manager and operator of theatres; that the conditions as to location, repair and reputation were contrary to the representations made by appellee.

Counsel for appellee rely upon Borders v. Kattleman, 142 Ill. 96, to sustain their contention that because the theatre was at a place remote from that where the lease was executed and because of appellee's entire lack of knowledge in relation to the theatre, its location, condition or reputation, that appellant, though barren of actual knowledge in relation thereto, is presumed to have such knowledge, and that appellee was justified in relying upon such assumption and that such representations not being true in fact, were a fraud in law, sufficient to confer the right upon a court of equity to cancel the lease made in faith of the truth of such representations. However, without discussing

the principle thus laid down, it is quite clear that the facts are not at all so analogous to the case at bar as to make it of any controlling force in our decision.

Two things are significant and seem to us to be irreconcilable with appellee's claim for relief. First. The clause of the lease quoted after this sentence, to our minds inhibits a conclusion of fraud or misrepresentation as to the condition of the theatre at the time the lease was executed and put appellee upon inquiry as to its real condition and, failing such inquiry, bound him to take it in the condition in which it was at the time the lease was made: "Furthermore it is understood that I take the house etc. just as it is at this date, and any and all changes, furnishings and improvements are to be made at my expense solely and are to conform with the consent of the lessor." Second. Appellee avers that when he learned of the condition of the theatre he "thereupon * set about placing the said premises in good, safe condition and repair, so that it would meet the requirements of the City authorities of the City of Springfield, Ohio, so it could be used as a theatre. That thereupon sometime in the month of October 1908 your orator did open up said premises as a theatre." Appellee operated the theatre until November 25, 1908, and paid one month's rent. The condition of the lease recited and the action of appellee in making repairs are inconsistent with his present claims. The covenant quoted is contradictory of the claim now made by appellee as to representations made by appellant concerning the condition of the theatre as to repair or otherwise at the time he signed the lease. If that covenant means anything (and we think it means just what it says), it is notice to appellee that appellant was, if not ignorant of the condition of the theatre, not willing to repair or alter it, and that appellee took it as it then was and assumed the burden of putting it in such condition as might be necessary or suited to his taste or convenience.

Appellee was not a novice in matters theatrical, and

therefore presumably knew the consequences of his act in executing the lease and in taking the theatre in whatever condition it might be in, and assuming the obligation of changing it to suit whatever purpose he might have in view for its future operation. As further proof of his entire understanding of his obligation he took possession of the theatre and put it in such condition of repair that it conformed to regulations of the municipality in which it was situated; and from the further fact that it was opened and operated as a theatre it was inferably so done with the license and consent of the municipality. When appellee repaired the leased theatre, he put his own construction and interpretation upon that clause of the lease above set forth, and we regard what he then did as being the measure of his obligation thereunder. If appellee desired to cancel the lease by reason of the fraudulent representations set forth in his bill, he should have proceeded at the earliest possible moment to rescind. Such time should not have been later than when he first ascertained the true condition and the consequent falsity of the representations. By proceeding to repair and use the premises he ratified the whole transaction and waived the misrepresentations, if any were in fact made. Appellee by inspection knew the condition of the theatre as to repair and sanitation. Whether it was, as to location, first-class and if it had been condemned for any reason by the municipality, these facts were also readily ascertainable. Such representations, however, were merely matters of opinion about which persons might disagree, and did not constitute as a matter of law a misrepresentation. Much less can they be held to be fraudulent when the subject-matter of the representation is equally open for inspection by all the contracting parties and no fraudulent means or device was used or exerted to prevent such inspection. Brady v. Cole, 164 Ill. 116.

The bill does not state a case calling for the inter-

ference by injunction of the enforcement of the rights of appellant under the lease in a court of law; neither is appellee entitled to rescind his contract of lease or cancel it for any reasons appearing from the averments of the bill. Had appellee been entitled, on the facts averred, to a temporary injunction, it was improvidently granted without notice to appellant of the application. The suit, the prosecution of which was enjoined, was commenced in the Municipal Court January 27, 1909. The cause was set for trial before a judge of that court for February 26, 1909. The bill was filed the day preceding the trial day, February 25, 1909. Nothing appears, either by averment in the bill or statement of any fact in the affidavit accompanying it, excusing the delay in filing the bill of nearly one month from the time the suit was instituted and of three months from the time when appellee abandoned the theatre for the reasons averred. The policy of the law in this forum is, that no one shall be deprived of any substantial right, not even temporarily, without being first heard in his defense. It is plain that no adequate reason appears why appellee should not have sooner filed his bill and given notice to appellant of his application for an injunction. In failing to give notice appellee obtained an unlawful advantage over appellant and one not sanctioned by our courts. The decisions are numerous as well as harmonious on this point. An averment that the applicant for an injunction will suffer irreparable injury if the writ is not granted without notice to the party sought to be enjoined is wholly insufficient to sustain an injunctional order or the action of the court in granting it, unless such facts are stated either in the bill or affidavit accompanying it that warrant the conclusion of irreparable injury. And if it appears that the waiving of notice sought is occasioned by the unexcused delay of the moving party, the injunctional order must be denied. Brin v. Craig, 135 Ill. App. 301; Gonyo v. Village of Wilmette, 135 *ibid.* 645; Williams v. Har-

per, 127 *ibid.* 619; Goldberg v. Laughlin, 137 *ibid.* 283; Ebann v. Brown, 139 *ibid.* 213.

Because the bill does not state a case entitling appellee to the injunction and any other relief prayed, the order of the Superior Court awarding a temporary injunction is reversed.

*Reversed.*