(No. 12939.—Decree affirmed.)

R. S. WOODROW *et al.* Appellees, *vs.* ANNA QUAID *et al.* Appellants.

*Opinion filed February 18, 1920—Rehearing denied April 8, 1920.*

1. FRAUD—*contract price must be grossly excessive to be evidence of fraud.* The fact that land is not worth the price per acre stipulated in the contract of sale is not ground for refusing to enforce the contract unless the stipulated price is so excessive as to furnish satisfactory evidence of fraud.

2. SAME—*fraud is an affirmative defense, which must be proved.* Fraud is not presumed but is an affirmative defense, which must be proved like any other fact.

3. SPECIFIC PERFORMANCE—*a contract free from objection will be enforced as a matter of right and not as a favor.* If a contract is unjust and inequitable although it may be legal and enforcible at law a court of equity will not compel specific performance, but if a contract is free from objection specific performance is allowed as a matter of right and not as a favor.

4. SAME—*when court will decree specific performance of contract for sale of farm land.* Where the owners of a farm made no fraudulent representations or concealment as to their land and did nothing to prevent a full examination by the purchaser, who was experienced in farming and made a thorough inspection of the improvements on the land although she did not go over the farm, a court of equity will decree specific performance of the contract of purchase, where the price per acre is not so·unreasonable as to be evidence of fraud.

5. APPEALS AND ERRORS—*when cause must be remanded although decree is affirmed.* Where the trial court, in decreeing specific performance, has retained jurisdiction to make any further orders necessary for carrying into execution the provisions of the decree, the Supreme Court, on affirming the decree, must remand the cause for further orders to carry the decree into effect.

APPEAL from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

HAL M. STONE, and WILLIAM R. BACH, for appellants.

LIVINGSTON & WHITMORE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This appeal is from a decree for specific performance of a contract for the purchase by the appellants, Anna Quaid, her son, Thomas Quaid, and her daughter, Grace B. Spencer, of a farm in York township, Washtenaw county, Michigan, owned by the appellees, R. S. Woodrow and S. O. Rothfuss.

The bill alleged that a contract was made on December 6, 1916, by which the complainants agreed to sell and convey 215 acres of land and the defendants agreed to pay therefor $160 per acre; that a cash payment of $1000 was made and the balance was to be paid on March 1, 1917, on the delivery of a warranty deed and an abstract showing merchantable title; that the complainants were to assist the defendants in a sale of 120 acres of farm land in McLean county, Illinois, at $250 per acre, and if the same should not be sold by March 1, 1917, the complainants were to take it at that price to apply on the purchase; that the complainants had performed the contract on their part and the defendants had refused to perform it and had brought suit at law against the complainants for the $1000 paid. The answer admitted the execution of the contract and the payment of $1000 therein provided and the bringing of the suit for the cash payment, and charged that the contract was induced by fraudulent representations of the complainants as to the value and nature of the land, the yearly rental value of it, as to the fact that 12 acres of fall wheat had been sown on the farm, that the land was well tiled and that all of the land was of the same character as that which had been shown to the defendant Anna Quaid. The bill was amended to ask for reformation of the contract as to the description of one tract constituting part of the Michigan land, and the complainants filed their cross-bill for a return of the $1000 cash payment, together with interest. The issues were referred to the master in chancery

to take the evidence and report the same with his conclusions. The master took the evidence and returned the same to the court with his conclusion that the complainants did not make any material fraudulent misrepresentations concerning their land. He recommended that the complainants should cut the timber and remove the stumps, as they had offered to do, from any timber land on the Michigan farm in excess of five acres within a reasonable time and prior to the delivery of a deed therefor; that a description of one tract of complainants' land should be reformed, and the defendants should be given the option to convey the McLean county land to the complainants as a part of the purchase price and the contract should be specifically performed. The court overruled exceptions to the report and found that there were no false and fraudulent misrepresentations by the complainants; that defendant Anna Quaid personally inspected the land and improvements, and no deception was practiced by the complainants and nothing was done by them to prevent her from inspecting the land; that the exact number of acres of timber land was unknown at the time of making the contract, and the complainants had voluntarily agreed to clear the land of all timber over and above seven acres, if there should be any, and this should be done before March 1, 1920, and the complainants should enter into an indemnifying bond to reduce the number of acres of timber on the land accordingly, and that the defendants ought to have an option to convey to the complainants the 120 acres of land in McLean county at $250 per acre to apply on the purchase. The decree was in accordance with these findings.

The complainants were very extensively engaged in the real estate and mortgage business at Toledo, Ohio, both as partners and members of corporations, and they employed agents and an attorney who gave his entire time to their business. In November, 1916, about ten days before Thanksgiving, their agent, Earl DeMude, and Anna Quaid,

who lived on the farm in McLean county, Illinois, went to Ohio to look at a farm in northwestern Ohio with a view to a purchase by her. They met Woodrow at Bryan, Ohio, and she looked at a farm but was not pleased with it because it was too wet and the improvements poor. She said that she wanted a farm with two sets of improvements, and they told her they had such a farm near Milan, Michigan, with separate improvements on different sides of the railroad. She concluded to go and see that farm and went by automobile with DeMude, Rothfuss and Woodrow. They reached the farm in the morning and it was raining and misty, so that it was not the most favorable time for inspection. Woodrow and Mrs. Quaid got out of the automobile and went through each set of improvements, consisting of houses, out-buildings, tool house, garage, barns and cow sheds. She looked from the buildings out upon the land but did not go over the farm, and said that the improvements suited her but she wanted to examine the land before deciding. Woodrow thought some winter wheat had been sown on the land and she was to pay $5 an acre for such seeding. The exact acreage of timber on the farm was not definitely known, but Woodrow said that a few acres of timber were an advantage for firewood. It turned out afterward that no winter wheat had been sown, so that she was not required to pay anything for the seeding, and there was probably 12 or 15 acres of timber land. Anna Quaid made no further examination of the farm, and about two weeks afterward, on December 6, 1916, Woodrow, Rothfuss and DeMude came to her home in McLean county and looked over the McLean county land, which she was trying to sell at $250 an acre, and said they would take the land at that price if she could not sell it. The contract was then drawn up and signed by Anna Quaid and her daughter, Grace B. Spencer, and a check for $1000 was given. The son, Thomas Quaid, was not at home, and the contract was left there and he signed it the next morning

and it was then delivered to DeMude. Afterward Thomas Quaid went to Michigan and examined the farm and found the soil to be a sandy loam, with many patches of Canada thistles, and the defendants then refused to perform the contract.

The complainants were men of very large and extended experience in the real estate business and perhaps were better qualified thereby to look after and protect their interests, but Anna Quaid was experienced in farming and in no way deficient in intelligence and capacity to contract. It is quite clear that complainants made no false or fraudulent representations or fraudulent concealment as to their land and did nothing to mislead Anna Quaid or either defendant nor to prevent a full and free examination of the land, and the improvements were in fact fully and thoroughly inspected. The testimony of Anna Quaid does not sustain the claim of fraud, and she said that there was no representation as to the value of the land. If the land was not worth $160 per acre, that fact would not be ground for rescinding the contract unless the inadequacy was so great as to furnish satisfactory evidence of fraud. (*Watson* v. *Doyle,* 130 Ill. 415; *Ullsperger* v. *Meyer,* 217 id. 262; *Zempel* v. *Hughes,* 235 id. 424.) Testimony, however, was given on that subject by a number of witnesses, some of whom testified that the land was worth about $100 an acre and others said it was worth $160. The only materiality of that evidence would be upon the question whether the consideration was so inadequate as to be evidence of fraud or the contract so unjust or inequitable that a court of equity would not enforce it, and the testimony would not justify such a conclusion. Fraud is not presumed and is an affirmative defense, which must be proved like any other fact. (*Brady* v. *Cole,* 164 Ill. 116; *Union Nat. Bank* v. *State Nat. Bank,* 168 id. 256.) If a contract is unjust and inequitable although it may be legal and enforcible at law a court of equity will not compel specific performance, but if

a contract is free from objection, specific performance is allowed as a matter of right and not as a favor. The court did not err in decreeing specific performance.

By the decree the court, having given an option to the defendants to convey the 120 acres of land at $250 per acre to apply on the purchase, to be exercised within twenty days from the date of the decree, which time has expired, and provided for removing the timber in excess of seven acres, retained jurisdiction to make any further orders necessary for carrying into execution the provisions of the decree, and this requires that the cause should be remanded to the circuit court.

The decree is therefore affirmed and the cause remanded for any further orders that will be necessary to permit the defendants to avail themselves of the option or to carry the decree into effect in other particulars. *Decree affirmed.*