(No. 17079.—Decree affirmed.)
LUANNA FARRIS, Appellant, vs. WALDO S. CAVENDER et al.
Appellees.

*Opinion filed October 28, 1926.*

1. CONTRACTS—*complainant seeking to rescind a contract must tender back what he has received.* A party to a contract who seeks to rescind it on account of fraud must tender back what he has received under the contract, so that the other party may be placed in the same position in which he was before the contract was entered into.

2. DEEDS—*party seeking to set aside deed for fraud must offer to do equity.* One who seeks to rescind a transaction involving the exchange of real property will not be allowed to have the deed set aside on the ground of fraud where she did not promptly notify the opposite party upon her discovery of the fraud and tender a re-conveyance but waited nearly four years after receiving knowledge of the fraud before taking any action to rescind the contract; and the fact that her husband has become insane does not excuse her from offering to re-convey or to do whatever equity may decree.

APPEAL from the Circuit Court of White county; the Hon. JULIUS C. KERN, Judge, presiding.

RICHARD SPICKNALL, JR., and DEWEY & CUMMINS, for appellant.

PEARCE & PEARCE, for appellees.

Per CURIAM: In August, 1919, Luanna Farris and her husband, Samuel S. Farris, conveyed to Waldo S. Cavender 71 acres of land in White county in exchange for certain land in Alexander county which Cavender and his wife conveyed to Farris. The White county land was subject to a mortgage for $2100 and the Alexander county land to a mortgage for $1400, and the deeds contained clauses of assumption of the mortgages by the respective grantees. In addition Farris and his wife executed a mortgage on the Alexander county land to secure their note for $3825 to

Cavender. On April 15, 1922, Cavender conveyed the White county land to Mary E. Cavender, his wife, and on April 16, 1924, Luanna Farris filed her bill in the circuit court of White county to set aside the three deeds and the note and mortgage on the ground that the exchange of land was procured by Cavender· by fraudulent representations, and that the conveyance to Mrs. Cavender was made without consideration, for the purpose of hindering the complainant in getting her land back, and that Mrs. Cavender had knowledge of the fraud. The court having heard the evidence dismissed the bill for want of equity, and the complainant appealed.

The appellant owned the land in White county and resided on it with her husband and family. Negotiations between her husband and Cavender were begun for the exchange of the land for 369 acres which Cavender claimed to own in Alexander county. The evidence is contradictory as to who proposed the exchange, but Cavender came to the appellant's home and saw her land there, and her husband then went to Alexander county, where Cavender showed him what he claimed was his land. Farris became insane and was committed to the hospital for the insane at Anna in 1923, so that his testimony was not available on the hearing. He was made a party to the bill and· a guardian *ad litem* was appointed for him. He was satisfied, and upon his return from Alexander county the exchange was completed by the delivery of the deeds and mortgage. Afterward the appellant's son, Samuel S. Farris, Jr., went with his father upon the land which the father supposed had been conveyed to him by the deed, helped him to fence it, and began cutting timber which he supposed was within the boundary. This timber, it was shown, was on section 15, and the owner stopped the cutting by the appellant's son and she was obliged to pay for the timber cut. The mortgage on the Alexander county land was foreclosed in 1920, the land was sold and the purchaser got whatever title was conveyed by Cavender's

deed to Farris. The land conveyed to Farris was described as "the fractional northwest quarter (¼) of the southwest quarter (¼) of section numbered twenty-two (22), township numbered seventeen (17) range two (2) west of the third principal meridian with all accretions thereunto belonging." The fractional quarter-quarter as originally surveyed by the government contained 39.09 acres. The Mississippi river was its southwest boundary. Evidence was introduced as to the encroachment of the river on the land and its recessions, the avulsions and accretions occurring during many years, and on this record it is difficult, if not impossible, to determine whether there were any accretions to which Cavender had any title. He received a warranty deed on October 16, 1913, from Harry S. McColgan and wife, in which the description is the same as in the deed to Farris, and there is some evidence that McColgan had been in possession for many years of more than 300 acres, claiming to own the 39 acres as originally surveyed and more than 300 acres of accretions. The evidence does not, however, identify the particular boundaries or extent of McColgan's possession, and in regard to accretions is not satisfactory.

It is not necessary, however, to determine the truth of Cavender's representations in regard to the quantity of the land, for they do not affect the decree. The bill bases the appellant's right to the relief prayed for, on the allegations that Cavender represented himself to be the owner of 369 acres of land in Alexander county which he would trade for her farm, and it was agreed that her husband should go with Cavender and Cavender would show him the land which he proposed to trade; that Cavender showed her husband a large body of land which he represented to contain 369 acres and falsely represented himself to be the owner of the land shown; that afterward the appellant and Cavender came to an agreement to trade lands, and she and her husband executed to him a warranty deed for her land and Cavender and his wife executed to Farris a warranty

deed for the land described, as has been mentioned; that she relied on the representations of Cavender that he would convey to her 369 acres of land and believed the deed was made to her for 369 acres of land, the same which Cavender had shown to her husband and had agreed to convey to her in exchange for her farm; that she did not know for a long time after the delivery of the deed that Cavender had made the deed to her husband and not to herself and did not know that he had not conveyed 369 acres of land, as he had agreed to; that Cavender did not convey to her 369 acres of land which he offered to convey to her, nor did he convey the land which he had shown to her husband as the land he had agreed to convey in exchange for her farm; that Cavender did not own 369 acres of land in Alexander county and did not own the land which he showed her husband, except the small tract mentioned in the deed; that at the time the deed was made the appellant did not know that it contained a clause subjecting the conveyance to a mortgage for $1400, of which the grantee was to assume payment; that she did not agree to assume any mortgage upon the land, and that the land was not worth $1400.

The deeds were executed in August, 1919. In the spring of 1920 the appellant had moved to Alexander county with her family and they went to cutting timber. She testified that in May, 1920, she found that the deed was made to her husband instead of herself. It had been left in Cairo, and she did not get to see it until the timber-cutting was stopped. Leo Kaufman attached the timber, and she had to pay $10 a day for having it cut until she got the attachment off. She learned in the spring of 1920 that Cavender did not own the land which he represented himself to own and had agreed to convey to her and that he had not made the deed to her as he agreed to but to her husband, and that the deed was subject to a $1400 mortgage, the payment of which she assumed by the terms of the deed. She said that she appealed to her husband to have the case set-

tled, but he could not do anything; that he was blind and his mind was affected, and he was afterward sent to the insane asylum.

The appellant permitted nearly four years to go by without taking any action to rescind the contract, and it was not until April 16, 1924, that the bill in this case was filed to set aside the deed. It is well settled that a party to a contract who seeks to rescind it on account of fraud practiced on him must tender back what he has received under the contract, so that the other party may be placed in the same position in which he was before the contract was entered into. *Brady* v. *Cole,* 164 Ill. 116; *Wenegar* v. *Bollenbach,* 180 id. 222; *Hansen* v. *Gavin,* 280 id. 354; *Huiller* v. *Ryan,* 306 id. 88.

It is apparent that appellant was unable to make restitution or tender back the land received from appellees because the title had been conveyed to her husband and on account of his insanity he could not make a conveyance. This fact, however, did not excuse her from offering to make what restitution the court should in equity decree. The bill seeks to set aside her deed to Cavender but makes no offer to compensate for the property received by her. Whether the facts of this particular case would justify a modification of the rule requiring the party seeking to rescind to tender back the thing he had received, they do not excuse the complainant from offering to do what a court of equity requires. Equity may not decree that a deed, though procured by fraud, shall be set aside unless the party seeking to have such relief offers to do equity. The bill was therefore properly dismissed.

The decree will be affirmed.        *Decree affirmed.*