# N. K. FAIRBANK *et al.*

*v.*

# RUDOLPH HAENTZSCHE.

1. MASTER AND SERVANT—*when servant can recover for negligence of master.* Where a servant is injured, not by anything occurring in his employment or that is incident thereto, but by a temporary peril to which he and other servants are exposed by the negligent positive act of the employer, without any negligence on the servant's part, he is entitled to recover damages from the employer on account of such injury.

2. Where a temporary peril is created by the positive act of an employer, it is not necessary that a servant, in order to maintain an action for injuries occasioned to him thereby, should have given notice of such temporary peril and demanded its removal.

3. Whilst there is no element in the contract of service that the servant shall be protected absolutely from danger, nevertheless the master may not with impunity expose the servant to danger not contemplated in the original employment, or connected therewith.

4. COMPARATIVE NEGLIGENCE—*as between master and servant.* Where a servant is employed in a business, and at a place not at all dangerous, and the employer creates a peril at the place where the servant is at work, and the servant, in the performance of his regular duty, has occasion to pass where the peril is, and is guilty of negligence in doing so, and is injured, his negligence is slight, as compared with the negligence of the employer, which is gross, and the servant will be entitled to recover.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. WALKER, DEXTER & SMITH, for the appellants.

Messrs. BARBER & LACKNER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

In December, 1872, Mary Arnold was employed in one department of appellants' factory. There were in the same room with her 18 or 20 persons, mostly females, all engaged in the work of making tin pails in which lard was to be packed. What was then but one room had formerly constituted two. The partition, however, that divided them had all been taken down, except a small portion left for support. Around the sides of the room were placed benches, at which sat the girls, whose business it was to solder the tin work. It was deemed expedient to change the engine from one room of the factory to another, and it was placed in the room west of and adjoining what was the work-room before the partition was removed. The main shaft projected through the division wall into the work-room occupied by the deceased and other employees, a distance from four to six feet, at a point a few feet from that part of the partition left standing. This change was made on the 14th of December, in the evening, for the reason, as is alleged, the proprietors were so pressed with business they had not time to do it during the day. On the morning of the 16th of December, Mary Arnold came, with the other girls, to her work at the usual hour. Having taken some pails from the "crimper," which stood a little north of the center of the room, and placed them on her bench, she started to get some solder, which was kept in another part of the room. In going to or coming from that point, she passed the shaft, then in motion, and, in some unexplained way, her clothing was caught, drawing her around it, which occasioned the injuries that produced her death.

It is contended the deceased had the same knowledge, or means of knowledge, of the producing cause of the injury, with appellants, and hence it is insisted there can be no recovery. The principle, that where the servant has equal

means of knowledge, with the master, of the danger to which he is exposed while in the service of the latter, he will be presumed to assume all risks incident to the employment, is certainly familiar law, and is sustained by the authorities; but the difficulty is, in the application of the principle to the facts of this case. The deceased was not injured by anything occurring in her employment, or by anything that could properly be said to be incident thereto. It was by a temporary peril, to which she and the other employees were exposed, by the negligent conduct of the proprietors of the factory. It is not controverted the length of the shaft, when put in, was greater than was necessary, and the only reason assigned for not sooner cutting it off was, the press of business. This fact will hardly justify the conduct of appellants. According to their own testimony, they knew the shaft, in its then condition, was dangerous to those engaged in the room, for they undertake to prove they warned them to be careful. The room was about 50 feet long, by 25 or 30 feet wide. The center portion was occupied by a press, crimper, shears and boxes, used in forming pails. There were engaged in this department 18 or 20 women. Besides, the room contained all their work upon which they were engaged, and much other material. It was necessary for the employees to go from one part of the room to another, and, in doing so, they had, of necessity, to pass this revolving shaft. It had around it no guard, indeed nothing at all, to prevent persons from getting against it.

But for the urgent necessity for the manufacture of this work, which occasioned great hurry, it distinctly appears, from the evidence, the danger to which the employees were exposed would have been previously removed by shortening the shaft, as was afterward done. The superintendent, and no doubt all the employees, understood it was a mere temporary arrangement. Notwithstanding the employees may have had reason to suppose it was dangerous, it was for that reason they may have considered it not necessary to quit the service of appellants.

Under the circumstances of this case, deceased was under no legal obligation to give notice to the proprietors of the temporary peril to which she was exposed, and demand its removal, before she could maintain an action for injuries sustained in their service. There are cases where it would be the duty of the employee to give the employer notice of any unusual danger connected with the service, and, if not removed, to quit his employment, or assume all the hazards; but this is not such a case. Here, the danger was created by a positive act of the proprietors of the factory, and there is neither reason nor authority for saying, in such a case, notice is necessary. There was, therefore, no negligence on the part of deceased in continuing in the service the brief period it was supposed this temporary danger would exist. It can not be said she waived any right by continuing in their employment without objection.

While there is no element in the contract of service the servant shall be protected absolutely from danger, nevertheless the master may not with impunity expose the servant to danger not contemplated in his original employment, or connected therewith. Especially is this so where the servant may reasonably expect the cause of the exposure will be removed in a brief period. This is the case presented by this record. The additional peril was thrust upon the employees, temporary though it was intended to be, without the shadow of a reasonable excuse. It was negligence of a very high degree to permit the shaft, extending, as it did, so far into the room, to be operated at all, where so many persons were passing and repassing, while engaged strictly within the line of their duty. It was the plain duty of the proprietors, no matter how pressing the work, to stop all operations until it could be made secure.

It is urged, the principal contributory cause of the injury to appellee's intestate was her own negligence, and whatever danger there was, in passing or approaching the shaft, must have been seen and voluntarily encountered.

We can not concur in this view of the case. The passway to the point where the solder was kept, from the place occupied by the intestate, was obstructed on either side of the machinery that stood near the center of the room—on the side where she attempted to pass, by the portion of the partition left standing, and on the other side, by the bench occupied by the other employees and their work. Neither passway was free from obstructions. The one most distant from the shaft was, of course, the safest. But it is in proof the employees passed on either side, as to them seemed most convenient. There was certainly no great degree of negligence in attempting to pass on the side nearest the shaft. Her negligence in that regard was slight, in comparison with that of appellants, which may justly be said to be gross, in permitting this shaft to be operated in a room so crowded with persons, where the slightest indiscretion on the part of any of them would prove fatal.

It is said, the doctrine of comparative negligence, which obtains in other cases, should not be extended to the case at bar. No reason is assigned for the distinction sought to be taken, and we are unable to perceive any. It would appear to be a case where the principle of comparative negligence, as held in this State, would find its most appropriate application. The employment in which the deceased was engaged was not, in itself, at all dangerous. If she was guilty of negligence in attempting to pass on the side of the room nearest the shaft, her negligence can, with great justness, be said to have been slight indeed, in comparison with the negligence of appellants.

It is apparent a mere trifling expenditure of time and labor would have avoided this fearful accident. The shaft was afterwards cut off, and no injury ever occurred again from its continued use. The cases of *The Chicago, Burlington and Quincy Railroad Co.* v. *Gregory*, 58 Ill. 272, and *The Toledo, Wabash and Western Railway Co.* v. *Fredericks*, 71 ib. 294, in this court, fully warrant the application of the doctrine of comparative negligence to the facts of this case.

The instructions given for appellee, to which exceptions are taken, are not so variant from the law, as we understand it, as would justify a reversal of the judgment. The first one, which declares the doctrine of comparative negligence, states it so nearly accurate it could not have misled the jury. As to the second, which declares the law does not require as high a degree of discretion, in this class of cases, on the part of a child or person of tender years, as it does of one of mature age, it announces a correct principle, and its application, under the evidence, was for the jury. The evidence does not show the deceased was a mere child, or what is usually termed a person of tender years, but it is shown she was comparatively young. The jury may have believed she was not possessed of a very high degree of discretion, or very large experience, and hence the principle embodied in the instruction would not be inappropriate, although not couched in the most accurate language, in its application to the facts of the case.

On the whole record, as presented to us, a majority of the court are satisfied justice has been done, and the judgment must be affirmed.

*Judgment affirmed.*