# THE McCORMICK HARVESTING MACHINE COMPANY
## v.
## GUSTAV BURANDT.

*Master and Servant—Negligence of Master—Personal Injury—Evidence—Instructions.*

1. The evidence of a witness proposing to testify as an expert should not be admitted without a previous showing as to the possession by him of such skill as will justify receiving it.

2. If, upon the evidence in a given case, the plaintiff has a right to recover, the question of a variance from the declaration will not be raised by a general motion on the part of the defendant to exclude certain testimony from the jury. The variance should be pointed out.

3. In an action by a servant to recover from his employer for a personal injury alleged to have occurred through its negligence in failing to protect him from a dangerous appliance, this court, in view of the evidence, declines to interfere with the judgment for the plaintiff.

[Opinion filed June 30, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. JENKINS & HARKNESS and W. W. GURLEY, for appellant.

Mr. EDMUND FURTHMANN, for appellee.

GARY, P. J. This is an action by the appellee to recover damages for a personal injury sustained by him while em-

ployed in the foundry of the appellant. The fact and manner of the injury and the amount of damages are not in question.

The foundry was a building 300 feet long, and eighty feet wide. Sunken in the floor of the foundry extending from very near the center of the building each way to the ends, where three lines of "conveyors" about thirty feet apart, and those nearest the sides of the building, about thirteen feet therefrom. They consisted of troughs which, when covered with two-inch plank, would be even or level with the floor, in which troughs were carried, by endless chains, iron plates, lozenge shaped, eight inches wide in the center, thirteen inches long, distant from each other eighteen inches. The bottoms of the troughs were shaped to fit the plates, which were dragged by the chains through them, standing upright on the edge of one side, thereby conveying along the troughs the sand which was thrown into them. Across the troughs, four feet apart, were cross pieces, of three by four inches, let into the sides to lay the plank cover on, the bottom of which cross pieces were two inches or a little more above the iron plates. About midnight in February, 1888, the accident happened.

The appellee had worked in the foundry, sometimes of nights and sometimes day work, for two years. At the time he was injured he had been from three to ten nights (the testimony conflicts as to the time) attending to these conveyors, and the machinery by which they were operated.

The testimony tends to show that from fifteen to thirty men were at work in the foundry of nights, and that these conveyors were without cover or protection while in use, except that at one place at the north end of the middle conveyor, in the north end of the building, there was a plank about ten feet long which was intended to be kept in place as a cover. Whether that plank was in place as such cover at the time of the accident, is disputed.

The appellee testified that when he was set at this work he was instructed that if he was called to any part of the machinery he must go and walk as fast as he could; that he was reluctant to undertake the work, and tried to be relieved from

it, as he did not understand that work much; that his superiors told him that he would have to attend to it temporarily. This reluctance of the appellee is disputed.

. There was testimony tending to show that it was practicable to have guards along the conveyors when the covers were off, and also that it was not practicable.

The appellee's account of the accident is that, being at his proper place by a machine at the north end of the foundry, he was called to the south end; that he hastened to cross the middle conveyor at the north end of it, where the plank cover should have been, but it had been removed; that the foundry was very dimly lighted; that in consequence of the removal of the cover, without his knowledge, he stepped into the conveyor and received the injury complained of.

There was other testimony, also, that the plank cover had been removed and the light dim.   On the part of the appellant there was testimony that the plank cover was in place; that the appellee stepped into the conveyor south of the cover, and as to the sufficiency of the light.   No instruction to the jury was asked by the appellee, and all that the appellant asked were given.   The errors assigned as occurring on the trial were in admitting testimony to the practicability of having guards along the conveyors when the covers were off; as to the want of knowledge by the appellee about machinery, and in refusing to permit the superintendent of the works of the appellant, after he had described what the appellee had to do, to answer this question:

"Was there anything in that work that required particular mechanical skill?"   If the subject was one upon which the opinion of an expert was admissible—which probably it was not—the witness was not shown to be himself possessed of mechanical skill, without which he would not be an expert. The testimony admitted was competent upon the questions of negligence by the appellant, and ordinary care by the appellee.

When the appellee rested his case, the appellant moved the court to exclude the testimony from the jury and excepted to the denial of the motion, and now assigns that denial as

error. If, upon the evidence, the appellee had a right to recover, the question of any variance from the declaration would not be raised by a general motion of that character; the variance should be pointed out. W., St. L. & P. Ry. v. Coble, 113 Ill. 115, and cases cited in brief of appellee there. Start v. Moran, 27 Ill. App. 119.

Now, upon the general merits of the case, if, by instructions, the appellee might have presented to the jury as a ground for a verdict in his favor, any theory justifying such a verdict and which the evidence fairly tended to support, then he is entitled to retain his judgment. Middleton v. Roycroft, 33 Ill. App. 381. In many respects there is quite a similarity, not in the circumstances, but in the legal effect of the circumstances, in that case and this.

Consistently with the evidence before them, the jury may have found that in the floor of this foundry, in which, during the night, with a dim light, clouded by steam rising from hot, wet sand, fifteen to thirty men were at work, there were placed by the appellant 800 feet of these conveyors, every foot of which was a constant menace to the limbs and lives of the men there employed. That they might, with no substantial inconvenience to the business, and but small expense, have been so guarded as not to be dangerous, and that therefore there was on the part of the appellant very great negligence in exposing its employes to such peril. That in his want of experience and consequent lack of presence of mind, under his orders to go quickly when called, if he made a mistake in the obscurity of the place, and actually stepped into a part of the conveyor not kept covered, it was not on his part a want of ordinary care.

Such considerations have in many cases prevented the application of the rule that the employe assumes the risk and must bear the consequences of the dangers of the business in which he engages. See the cases cited in Middleton v. Roycroft, 33 Ill. App. 381; Kane v. Northern Cent. Ry., 128 U. S. 91; Lee v. Woolsey, 109 Pa. St. 124; Plank v. N. Y. Cent. R. R. Co., 60 N. Y. 607; Wharton on Negl., Sec. 219; Fairbanks v. Haentzsche, 73 Ill. 236.

Even in the States where the doctrine of comparative neg-
ligence does not exist, the injured servant has not been denied
a remedy where the master unnecessarily exposed him to
danger.

The court committed no error in what it did, or in refusing
to undo what the jury did, and the judgment is affirmed.

*Judgment affirmed.*