WILLIAM E. FISHER, Defendant in Error, *vs.* CHARLES A. BURKS *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1916—Rehearing denied October 11, 1916.*

1. EQUITY—*relief cannot be granted on grounds not alleged in the bill.* A conveyance of real estate cannot be set aside upon the ground of fraud where there are no allegations of fraud or misrepresentation in the bill, as a complainant is not entitled to recover unless there are averments in the bill to correspond with the evidence.

2. SAME—*inadequacy of the consideration, unless gross, is not ground for rescinding contract.* Inadequacy of consideration, unless gross, is not, of itself, ground for the rescission of a contract for the exchange of lands, entered into by the complainant after inspecting the land he received.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding.

CHARLES C. LEFORGEE, THOMAS W. SAMUELS, STANLEY L. POGUE, and GEORGE W. BLACK, for plaintiffs in error.

HUGH CREA, and HUGH W. HOUSUM, (W. G. CLOYD, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Macon county by defendant in error against plaintiffs in error for the reconveyance of certain land, under an agreement entered into by the parties. After the pleadings were settled the cause was referred to a master in chancery to take evidence and report his conclusions of law and fact. The master recommended that the bill be dismissed for want of equity. On exceptions filed the chancellor overruled the master's report and entered a decree giving the relief prayed in the bill. From that decree this writ of error was sued out.

Plaintiff in error Charles A. Burks in 1908 was a real estate broker in Decatur, Illinois, and dealt in real estate in that neighborhood and in other parts of central Illinois. Defendant in error, William E. Fisher, resided at Hammond, in the adjoining county of Piatt. He had been a farmer all his life but was also interested in real estate to some extent. During the year the agreement was made he was the manager of a coal mine. Burks, shortly before negotiating with Fisher, became the owner, by purchase, of a farm of 160 acres in Lee county, Illinois. Fisher at that time owned 600 acres of timber land in Yazoo county, Mississippi. After some negotiations between the two, who seem to have known each other for years, they entered into a contract which provided, in substance, as follows: The first party, Fisher, agreed to convey to Burks by general warranty deed, free of homestead and dower, for a consideration of $7500, the 600 acres of timber land in Mississippi (describing it) and pay $3000 in cash, or part cash and balance in notes for six months, at the delivery of the deed. The second party, Burks, agreed to convey by general warranty deed, free from homestead and dower, for a consideration of $16,000, the 160-acre farm in Lee county, (describing it,) subject to a mortgage of $5500; deeds to be delivered within ninety days; each party to furnish a merchantable abstract within thirty days; fifteen days to be allowed for curing defects in the title; taxes and assessments to be paid before May 1 following; time to be the essence of the contract. The last clause of the contract. before it was executed, signed and sealed by Burks and Fisher reads: "See note on reverse side of this page, which is a part of this contract and equally binding upon both parties." On the reverse side of the contract was the following, in writing: "The party of the second part further agrees to level up floors, block up foundation, patch holes in plaster, put in new windows and paint the house which he is transferring, one coat of paint, and to make a deal on

said 160 acres of land for the party of the first part within six months, free of commission; and should he default in making such a deal, sale or trade within six months, he will give the party of the first part the option of trading back upon the same basis as stipulated in this contract, provided that first party be entitled to receive not less than $16,000 from any sale, trade or deal made by said second party on account of said premises, in cash, or part cash and balance property." This was signed by both parties but not sealed. Neither wife signed the contract or the addition on the back. On March 28, 1908, Fisher and wife conveyed to Burks, by warranty deed, the Mississippi land at a consideration of $7500, and Fisher executed a promissory note, dated April 15, in favor of Burks, for $3100, the incumbrance on the Lee county land having been found to be $100 less than as stated in the contract. Burks and wife, on April 2, 1908, executed to Fisher a warranty deed for the Lee county land for a consideration of $16,000, subject to the incumbrance of $5500.

The testimony taken before the master is quite voluminous as to what was said and done both before and after the contract was signed. Several conversations took place between the parties as to Burks' procuring a tenant for the Lee county farm and as to whether he told Fisher that he could get one at $5 per acre. The most of the testimony, however, refers to efforts by Burks to obtain a trade for Fisher so that he could dispose of the Lee county land and realize $16,000. Numerous propositions were submitted by Burks to Fisher,—the testimony tends to show more than two hundred,—but Fisher did not consider more than five or six of them. The testimony tends to show that he was satisfied with the terms of one of these, but found that a third party, interested with him in business and from whom he expected to receive assistance, did not care to join in the trade, and therefore he refused to proceed and it was not closed. These negotiations were carried on several

months after the time limited in the contract for the procuring of such a trade.

In May, 1910, Fisher filed this bill, asking for a reconveyance of the Mississippi land and offering to re-convey the Lee county land and that Burks pay back the $3100, the amount of the note given by Fisher at the time of the trade. The master reported as to the making of the contract and Burks' attempts to make a trade of the Lee county farm, as provided on the back of the agreement. The master also found that the 600 acres of land in Mississippi was timber land from which most of the timber had been cut, and was unproductive and raw and not worth more than $5 an acre; that the Lee county farm was reasonably good land, worth $75 an acre; that Burks had endeavored diligently for months to make some kind of a trade which would include Fisher's Lee county land; that he had procured one deal which was at first satisfactory to Fisher but which failed of being consummated because of the refusal of Fisher and those associated with him to agree on the terms; that Burks had carried out his part of the agreement to fix the buildings on the Lee county farm; that the contract was lacking in mutuality, and that the bill should be dismissed for want of equity.

The original decree was signed by Judge William C. Johns and filed with the clerk in vacation in July, 1912. It found that Fisher was in equity the owner of the Mississippi land and Burks the owner of the Lee county land; that Burks should pay the master, for Fisher, $5107.33, and in default of conveyance being made by the respective parties the master should execute a deed of the Mississippi land to Fisher and sell the interest of Burks in the Lee county land to make the amount of the decree, costs and expenses. A deed was thereafter made by the master to Fisher of the Mississippi land, and Burks' interest in the Lee county land was sold and bid in by Fisher and a deficiency decree rendered against Burks, in favor of Fisher,

for $3915.46. Later a bill was filed in Mississippi to set aside the deed of the Mississippi land to Fisher. The history of that litigation, which we deem immaterial, is argued at some length in the briefs. In 1914 Judge Whitfield, who had succeeded Judge Johns as circuit judge, on motion entered the original decree *nunc pro tunc* as of March 24, 1913. The sale and deficiency decree appear to have been based upon the *nunc pro tunc* decree.

Counsel for plaintiffs in error insist that the above decree is wrong (1) because it is based, in part, upon fraud when there is no allegation of fraud in the bill; (2) because it is based, in part, upon inadequacy of consideration; (3) because it lacks mutuality; (4) because the original contracts were not signed by the wife of each contracting party, and therefore specific performance could not be granted; (5) time being the essence of the contract, it was waived by the *laches* of defendant in error; (6) the original decree was void because filed in vacation, contrary to the statutes, and therefore the *nunc pro tunc* decree was void.

The decree finds that the contract was procured through fraud and misrepresentations on the part of Burks. Apparently this part of the decree is based on certain testimony offered for defendant in error that Burks had promised that he could turn in the Lee county land on a trade at $100 and that it would rent for $4 or $5 an acre, whereas the testimony showed that those figures were too high. In our judgment Burks' statements were only in the nature of expressions of opinion rather than statements of fact; that he thought he could rent the land for the amount stated and trade it for $100 an acre. Such statements are not fraudulent misrepresentations sufficient to avoid a contract. (*Tryce* v. *Dittus*, 199 Ill. 189.) But if it be assumed for the purposes of this case that the evidence tended to prove fraud, the relief here could not be granted on that ground as there are no allegations of fraud or misrepresentation in the bill. It is a fundamental principle of law that a party

must stand or fall by the material allegations of his bill. He cannot be permitted to state a case one way in his bill and make another and different case by the testimony. The allegations of the bill, proof and the decree must correspond. One is not entitled to recover unless there are averments in the bill to support the evidence. *Fish* v. *Cleland,* 33 Ill. 238; *Carmichael* v. *Reed,* 45 id. 108; *Stearns* v. *Glos,* 235 id. 290; *Wilson* v. *Wilson,* 268 id. 270.

We are also of opinion that the decree cannot be sustained on the ground of inadequacy of consideration. The weight of the evidence supports strongly the master's finding as to the value of the land in Mississippi, and while his valuation of the Lee county farm may be a little high, on the testimony offered, even if we should consider the testimony most favorable to the defendant in error to show the real value of the properties, we do not think the inadequacy of consideration is such as to justify the rescission of the contract and the re-conveyance of the land. The evidence shows conclusively that Fisher, as well as Burks, trusted to his own experience and judgment as to the values of the two pieces of land after an inspection of the Illinois farm and that he was advised by his own attorney with reference to the transaction, and the contract was entered into between both parties dealing at arm's length. In *Coles* v. *Trecothick,* 9 Ves. Jr. 234, Lord Eldon stated (p. 246) : "Unless the inadequacy of price is such as shocks the conscience and amounts in itself to conclusive and decisive evidence of fraud in the transaction, it is not, itself, a sufficient ground for refusing a specific performance." In *Lee* v. *Kirby,* 104 Mass. 420, it is stated the general rule is that "inadequacy of consideration, exorbitance of price or improvidence in the contract, in the absence of fraud, ambiguity or mistake, will not constitute a defense." Under the decisions in this State there is no such gross inadequacy of price as to justify, in itself, the setting aside of the

agreement of the parties. *Zempel* v. *Hughes,* 235 Ill. 424; *Bear* v. *Fletcher,* 252 id. 206.

We do not find it necessary to consider and decide the other questions involved.

The decree of the circuit court will be reversed and the cause remanded.    . .      *Reversed and remanded.*