## Fred Beck, Appellee, v. Baltimore & Ohio Railroad Company, Appellant.

1. MASTER AND SERVANT—*need of proof of due care by injured workman of interstate railway.* In an action for damages for personal injuries suffered by a workman engaged in interstate commerce for a railway company, under the Employers' Liability Act he need not prove due care on his part.

2. MASTER AND SERVANT—*contributory negligence of injured workman for interstate railway as affecting damages.* Any contributory negligence of a workman for personal injuries suffered by him while engaged in interstate commerce for a railway company should be considered by the jury in fixing whatever damages he may be entitled to in his action therefor.

3. PLEADING—*one good count as sustaining general verdict.* Under Cahill's St. ch. 110, ¶ 78, providing a general verdict shall not be set aside because one of several counts of a declaration is defective, a general verdict will be sustained if there are one or more good counts to sustain it.

4. MASTER AND SERVANT—*where burden of proof lies to establish assumed risk against employee injured in interstate commerce.* Under the Employers' Liability Act the burden of proof is upon the employer who relies on assumed risk to establish it on the part of the employee suing for personal injuries sustained while engaged in interstate commerce.

5. MASTER AND SERVANT—*when workman in interstate commerce need not exercise care to discover danger.* Under Section 1 of the Federal Employers' Liability Act, an employee is not obliged to exercise care to discover danger which results from the employer's negligence to entitle him to recover in an action for damages for personal injuries sustained while engaged in interstate commerce.

6. MASTER AND SERVANT—*what decisions govern construction of Federal Liability Act.* The State courts are governed in their construction, application, and interpretation of the Federal Liability Act by the decisions of the Federal courts.

7. MASTER AND SERVANT—*danger of appliance to employees in interstate commerce as jury question.* Whether an appliance used by a workman in interstate commerce was allowed to become in such condition by the employer as to endanger the employee was in the instant case a fact question for the jury in the employee's action for injuries sustained while so employed.

8. MASTER AND SERVANT—*whether employer should know danger of appliance used in interstate commerce as jury question.* Whether the dangerous condition of an appliance used by a workman in interstate commerce was so obvious that the employer knew or should have known thereof, is a fact question for the jury in the employee's action for injuries sustained while so employed.

9. MASTER AND SERVANT—*when negligence question for jury.* Whether a cotter pin was permitted to stick up so as to be likely to catch the clothing of a workman, and whether that condition was so obvious that it was known or should have been known to the employer, were questions for the jury.

10. MASTER AND SERVANT—*when jury finding of employer's negligence will not be disturbed on appeal.* The finding of a jury that an employer was negligent in using an appliance in a dangerous condition will not be disturbed on appeal unless against the manifest weight of the evidence in an action by the employee for personal injuries suffered thereby while engaged in interstate commerce.

11. SAVING QUESTIONS FOR REVIEW—*failure to object to evidence as waiving admission of other to same effect over objection.* Appellant is not entitled to object to admission of evidence by the trial court over his objection on a point on which he allowed a witness to testify to the same effect without objection.

12. DAMAGES—*when amount of verdict does not show jury's prejudice.* A verdict for $3,250, while large is not so excessive as to indicate the passion and prejudice in the jury which would warrant setting it aside in the case of a workman engaged in interstate commerce for a railway and injured by the employer's use of a dangerous appliance to the extent of a fractured coccyx bone, bruises and scratches, a knot on the head, and at the time of the trial an inability to grip with the right hand or lift that arm without difficulty.

Appeal by defendant from the City Court of East St. Louis; the Hon. WILLIAM F. BORDERS, Judge, presiding. Heard in this court at the March term, 1927. Affirmed. Opinion filed May 14, 1927.

KRAMER, KRAMER & CAMPBELL, for appellant; MORISON R. WAITE and WILLIAM A. EGGERS, of counsel.

LOUIS BEASLEY and EDWARD C. ZULLEY, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action on the case was instituted by appellee against appellant in the city court of East St. Louis.

The declaration consists of three counts. The first count alleges that appellant was engaged in interstate commerce, with an interstate railroad extending through the county of St. Clair and elsewhere, and that appellee was employed by appellant as a track repairer, etc., on said railroad; that appellant kept and operated a certain motor car, propelled by gasoline power, for the purpose of conveying its employees to the various places where they were to be employed; that said motor car was operated by and in charge of appellant's foreman; that appellant negligently permitted the sharp ends of a cotter pin to project above the outer surface of a revolving hub and axle in one of the wheels of said motor car, making it dangerous for appellant's employees to get on and off of said car, which said dangerous condition was known to appellant, or with the exercise of due care and caution should have been known to it, and was wholly unknown to appellee; that while appellee, for the purpose of being conveyed to his place of work, was about to get on said motor car, and as a direct result of appellant's negligence as above stated, appellee's clothing was caught by the projecting cotter pin and said revolving wheel, thereby throwing appellee to the ground, dragging him, etc., and alleging the damages for the recovery of which this suit was instituted. The second count is based on the alleged negligence of appellant in failing to equip said car with a self-starter, other-

wise its allegations are practically the same as those of the first, with an allegation of due care and caution on the part of appellee for his own safety, just prior to and at the time of his injury. The third count is practically the same as the first, except that it alleges due care on the part of appellee.

To said declaration, appellant filed a plea of the general issue. A trial was had at the September term, 1926, of said court, resulting in a verdict and judgment in favor of appellee for the sum of $3,250. To reverse said judgment, this appeal is prosecuted.

It is practically conceded that both appellant and appellee were engaged in interstate commerce at the time said injury occurred. Appellee was in the employ of appellant as a section hand, and had been so employed for some two and one-half years previous to his injury.

It had been the custom for the section men to report for duty at Caseyville, and to be conveyed from there to their place of work on the motor car in question, or on a similar one. Said motor car was not provided with a crank or self-starter, but in order to start the same the foreman took his seat and operated the controls, while some members of the gang pushed the car until it commenced firing. When it began firing, the men so pushing the car had to get on it while it was in motion. The record further discloses that the men pushing the car had no particular place from which to push it, but would take hold of the car for that purpose where it would seem most convenient. The evidence is to the effect that motor cars of this character have one wheel that revolves freely upon the axle, commonly called a loose wheel, and that is so in order that the car may be more easily handled. This loose wheel is held on the axle by a nut and this nut is held in place by a cotter pin through the axle.

On the day in question the foreman, John Higgins, took his seat on the car, and appellee and other of the

section men were pushing the same in order to start the motor. While so doing, appellee's overcoat was caught by the cotter pin, and he was thrown to the ground and dragged some 10 or 15 feet before the car was stopped. Appellee's injuries, here sued on, resulted from this accident.

Two instructions were given on behalf of appellee, and 14 instructions were given on behalf of appellant. It is contended by counsel for appellant that the court erred in giving appellee's instruction designated "A". This instruction is as follows:

"The Court instructs the jury that the plaintiff is not required by law to prove his case beyond reasonable doubt; it is sufficient if he proves his case by a preponderance of the evidence only."

It is first contended that it was error to give this instruction for the reason that the first count of the declaration fails to allege the exercise of due care on the part of appellee. The parties hereto being engaged in interstate commerce and this being a suit under the Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, it was not necessary for appellee to prove due care. His contributory negligence, if any, should be taken into consideration by the jury in fixing the amount of the damages, in the event of a recovery by him. *Fisher v. Chicago, R. I. & P. R. Co.,* 290 Ill. 49; *Brant v. Chicago & A. R. Co.,* 294 Ill. 606–616.

It is next insisted that said instruction should not have been given because it is contended that the second count of the declaration does not state a good cause of action, being based on the failure of appellant to equip said car with a self-starter or crank to start the same. No demurrer was filed to the declaration, and whether or not the second count states a good cause of action, the first and third counts do. A general verdict will be sustained if there are one or more good counts in the declaration on which to base the same. Cahill's St. ch. 110, ¶ 78; *Chicago & V. Coal Co. v. Moran,* 210 Ill.

9; *Klofski v. Railroad Supply Co.*, 235 Ill. 146–149; *Scott v. Parlin & Orendorff Co.*, 245 Ill. 460–465.

It is also contended that the instruction should not have been given because the declaration did not negative the defense of assumed risk. The burden of proof under the Federal Employers' Liability Act is on the employer, if the defense of assumed risk is relied on. *Fisher v. Chicago, R. I. & P. R. Co., supra,* 56; *Brant v. Chicago & A. R. Co.; supra; Kanawha & M. R. Co. v. Kerse,* 239 U. S. 576–581, 60 L. Ed. 448–451; *Central Vermont Ry. Co. v. White,* 238 U. S. 507–512, 59 L. Ed. 1433–1437.

Instructions of this character have been frequently approved by our Supreme and Appellate Courts. *Taylor v. Felsing,* 164 Ill. 331; *Chicago City R. Co. v. Bundy,* 210 Ill. 39; *Chicago City R. Co. v. Nelson,* 215 Ill. 436; *Chicago Consol. Traction Co. v. Schritter,* 222 Ill 364; *Pierson v. Lyon & Healy,* 243 Ill. 370–378; *Riordan v. Chicago City Ry. Co.,* 178 Ill. App. 323–330.

It is also insisted by appellant that there can be no recovery in this case for the reason that appellee assumed the risk incident to the use of said car as above set forth, and that there could be no recovery for the injury here sued for.

Section 1 of the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 (U. S. Comp. St. 1918, § 8657) provides:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children

of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.''

Under the provisions of said statute, an employee is not obliged to exercise care to discover danger which results from the employer's negligence. *Moore v. Wabash R. Co.*, 299 Ill. 596–605; *Brant v. Chicago & A. R. Co., supra*, 617; *Pennsylvania R. Co., v. Gavin*, 234 Ill. App. 28; *Texas & P. R. Co. v. Archibald*, 170 U. S. 665–713; *Gila Valley G. & N. Ry. Co. v. Hall*, 232 U. S. 101; *Chesapeake & O. Ry. Co. v. Proffitt*, 241 U. S. 468.

In *Gila Valley G. & N. Ry. Co. v. Hall, supra*, the court at page 100 says:

''The motion for direction of a verdict seems to have been rested upon the additional ground that the alleged defect was so obvious that its existence must have been known to the plaintiff, and that he therefore assumed the risk. There was no direct evidence that he knew of the defect, and it does not appear to have been a part of his duties to inspect the machine or the wheel, or to look after their condition. He had been employed for only three or four days in work that required him to ride upon the car, and at the utmost it was a question for the jury whether the defective condition of the wheel was so patent that he should be presumed to have known of it. And then, the question whether the defect was such as to render the use of the car dangerous was in dispute at the trial; hence, it could not be properly held that the risk was indisputably obvious, even to one who knew of the defect. * * * An employee is not charged by law with the assumption

of a risk arising out of defective appliances provided by his employer, unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the dangers incident to the use of such appliances. * * * An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it." Citing *Union Pac. Ry. Co. v. O'Brien,* 161 U. S. 451–457; *Choctaw, O. & G. R. Co. v. McDade,* 191 U. S. 64–68; *Texas & P. R. Co. v. Swearingen,* 196 U. S. 51–62.

In *Texas & P. R. Co. v. Archibald, supra,* the court, at page 674 in discussing this question says, quoting from *Missouri Pac. Ry. Co. v. Lehmberg,* 75 Tex. 67:

" 'Without now considering the question whether the rule in this respect charges an employee with knowledge of defects, except with regard to such appliances or instruments as he is engaged himself in using, we think it sufficient to say that the law does not, under any circumstances, exact of him the use of diligence in ascertaining such defects, but charges him with knowledge of such only as are open to his observation.

Beyond that he has the right to presume, without inquiry or investigation, that his employer has discharged his duty of furnishing him with safe and proper instruments and appliances.' ''

The State courts are governed in their construction, application and interpretation of the Federal Liability Act by the decision of the Federal courts. *Brant v. Chicago & A. R. Co. surpa,* 606; *Walker v. Iowa Cent. Ry. Co.* 241 Fed. 395; *Central Vermont Ry. Co. v. White, supra.*

It is conceded, and the evidence conclusively discloses, that the car in question was under the control of Higgins, the foreman of appellant, and that appellee had nothing whatever to do with the car, except to assist in starting the same as above set forth.

Appellee testified: ''The foreman of the gang operated this motor car. I did not have anything to do with its operation.  *  *  *  We pushed the car in the usual way, by the foreman's orders. Higgins was my foreman.  *  *  *  When I pushed the car and was about ready to jump on after the engine started firing, my coat got caught on the wheel or caught on something on there, and wrapped around and throwed me down on the tires, dragging me over the ties.  *  *  * It seems as though the wheel caught it, but afterwards I found out it was the cotter pin had caught it. After the car had stopped, my coat was still hanging on to it.''

Joseph Hill, a witness on behalf of appellant, testified: ''I saw Mr. Beck at the time; he was pushing the motor car.  *  *  *  He had his overcoat on and it caught on this cotter key and wound around between the cotter key and the nut, until it threw him down.  *  *  *  The coat caught on the cotter key first. I could see that from where I sat. It wrapped around the wheel after it had thrown him down; you could see where it caught and kept winding. I saw it get caught.''

The witness Joe Lutz testified with reference to the condition of the cotter pin: ''I seen the key through the wheel with the ends of it turned up toward the head. I judge the key to be about the size of a lead pencil. We call that a cotter pin, and was through the nut with both ends turned around like that, and then on that particular afternoon of the accident I remember seeing it, and took my foot and pushed it down.'' This latter statement was stricken on appellant's motion. However, on re-examination said witness testified: ''After the accident a man called me down there and I put my foot up against it and pushed it back. One of the ends of the cotter pin was pulled out from the nut.'' This testimony was not objected to and is in the record.

Under the evidence in this record, it was a question of fact for the jury as to whether or not the cotter pin in question was allowed to stick up so as to be likely to catch on the clothing of the workmen, and as to whether that condition was so obvious that its condition was known to the defendant or by the exercise of due care should have been known to it. If it were so known, or by the exercise of reasonable care should have been known, then it was for the jury to say whether or not appellant was negligent in using the car in that condition in carrying its employees to and from their work. Their finding in that regard should not be disturbed unless against the manifest weight of the evidence, and we hold that it was not against such weight.

It is next contended by appellant that the court erred in allowing certain of the witnesses to testify to the effect that appellant at the time of the trial had a car which was started with a crank.

While objection was made to the testimony of appellee and the witness Joe Lutz in this connection, the witness Joseph Hill testified, without that objection: ''They (appellant) have two motor cars for the purpose of carrying the section men. The other car they

got lately; they start it with a crank. They have to turn the crank just the same as you would a Ford. You don't have to push that new one.'' This being the state of the record, appellant is not in a position to urge this objection.

Lastly, it is contended by appellant that the verdict of the jury is excessive. Dr. Little, a witness on behalf of appellee, testified that he examined appellee after the injury, and found that the coccyx bone was fractured; that his shoulder was bruised and scratched; and that he had a large knot on the right side of his head. He was placed in a plaster cast for some four or five weeks, and at the time of the trial was still unable to grip with his right hand or to raise his right arm without difficulty. While the verdict is rather large, it is not so excessive as to indicate that the jury were governed by prejudice and passion. That being true, we would not be warranted in reversing the judgment on account of the size of the verdict.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*