Frank Worthey, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

Gen. No. 7,921.

586

May term, 1928. Heard in this court at the Opinion filed February 15, 1929.

Geo. B. Gillespie, for appellant; Miller, Elliott & Westervelt and Gillespie, Burke & Gillespie, of counsel.

John E. Cassidy, for appellee.

Mr. Justice Boggs delivered the opinion of the court.

The Peoria & Eastern Railway Company was the owner of a certain railroad, extending from Peoria, Illinois, to Indianapolis, Indiana, which road was in the possession, operation and control of appellant.

At Urbana, Illinois, the main line of said road is connected with a roundhouse and turntable by means of two switch tracks, laid upon an embankment which was supported by a concrete retaining wall. At the point where the hereinafter-mentioned accident occurred, the top of the wall was about 18 inches from the end of the ties supporting the outer of said switch tracks. It was the custom to detach engines from both passenger and freight trains on the main line and run them over said switch track to said roundhouse for the purpose of coaling, sanding, quick repairs, etc.

On May 12, 1926, and for a few days prior thereto, appellee, a bridge carpenter, and the gang with which he was working were engaged in removing said concrete wall. On said date, most of the concrete had been removed, leaving a perpendicular wall of dirt, unsupported. About three o'clock in the afternoon, appellee was ordered into the ditch at the bottom of said embankment to assist in removing said concrete. While so engaged, the embankment caved in on appellee, bruising him and rendering him unconscious. He was first removed to a hospital in Urbana, later to a hospital in Indianapolis, and was placed under the

care of doctors selected by appellant. He remained in the hospital at Indianapolis for some four months, and was then taken to his home in LeRoy. It was practically conceded that appellee has been seriously and permanently injured.

Negotiations for a settlement were had between appellee and the claim agent of the Peoria & Eastern. No settlement having been reached, appellee's attorneys filed a claim under the Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.*, after which negotiations for settlement were had between said attorneys and said claim agent. On December 30, 1926, L. Earl Bach, one of appellee's attorneys, with said claim agent, called on appellee at his home, at which time the following instrument was signed by appellee:

"For the sole consideration of Two Thousand Five Hundred and No/100 Dollars, received to my full satisfaction from The Peoria and Eastern Railway Company I hereby release and discharge the said The Peoria and Eastern Railway Company and all other parties in interest F W from all claims, demands, causes of action, and from all liability for damages of whatsoever kind, nature or description now existing or which may hereafter arise from or out of injuries received by me at or near Urbana State of Illinois on or about the 12th day of May, 1926. I have Read and Understand this Release.

Received $2,500.00 in full settlement Dec. 30th 1926.

. RELEASE FRANK WORTHEY (Seal)"

Thereafter, appellee employed the attorneys who now represent him, and instituted suit against appellant in the circuit court of Peoria county to recover for said injuries.

The declaration, as finally amended, avers that on May 12, 1926, appellee was engaged in repairing said retaining wall; that, by reason of the negligence of appellant, said embankment became defective; that appellee did not know of said defective condition, but

that appellant did know thereof, and of the hazard to which its workmen were subjected; that it was the duty of appellant to remedy said defect, but that it negligently failed to do so, or to notify appellee of said danger, etc., by reason whereof, while appellee was in the exercise of due care, the embankment and retaining wall caved in, injuring appellee, etc.

To said declaration, appellant filed a plea of the general issue, a plea that appellee assumed the risk of said employment, etc., and a plea of release.

Appellee traversed the plea of assumed risk, and, by leave of court, replied double to the plea of release. The first replication denied the execution, etc., of said release; the second replication averred that, on the date of said release, appellee was suffering great pain and was under the influence of drugs; that on account thereof he was not in possession of his mental faculties, and did not sign said release "with knowledge of the meaning of said release, or any knowledge of what he was signing, or that he was signing at all," and that the execution of said release was obtained by fraud and circumvention.

Appellant rejoined, traversing the second replication to the plea of release. A trial was had, resulting in a verdict and judgment in favor of appellee for $5,000. To reverse said judgment, this appeal is prosecuted.

It is first contended by appellant that the court erred in refusing to exclude the evidence and direct a verdict for appellant, upon motions and instructions tendered by it at the close of appellee's evidence. In this connection appellant first insists that there is no evidence in the record to support the charge of negligence. In other words, appellant insists that appellee was engaged in rendering a dangerous place safe, and that therefore the rule requiring an employer to furnish its employees a safe place to work does not apply.

There is nothing in the record to the effect that, prior to the removal of said concrete wall, there was anything unsafe or dangerous at the place in question. The danger arose while said work was being done, under the direct management and control of appellant's foreman, and the danger increased as the work progressed.

It is next insisted that the surrounding conditions at the place where appellee was injured were as open and obvious to appellee as to appellant and its foreman, and were incident to appellee's employment; that appellee therefore assumed the risk thereof.

An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. *Gila Valley, G. & N. R. Co. v. Hall*, 232 U. S. 94, 101; *Chesapeake & O. R. Co. v. Proffitt*, 241 U. S. 462, 468; *Beck v. Baltimore & O. R. Co.*, 244 Ill. App. 441–447. However, the risks assumed by a servant do not include such as arise from the negligence of the master, nor such as are unreasonable or extraordinary (*City of La Salle v. Kostka*, 190 Ill. 130), or from those which constitute a temporary peril created by the negligent, positive act of the master. *Sinclair Co. v. Waddill*, 200 Ill. 17–20; *Fairbanks v. Haentzsche*, 73 Ill. 236.

While, under the Federal Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, assumed risk is a complete defense, yet the burden of proof on such issue is on the employer. *Fisher v. Chicago, R. I. & P. R. Co.*, 290 Ill. 49–56; *Brant v. Chicago & A. R. Co.*, 294 Ill. 606–616; *Kanawha & M. R. Co. v. Kerse*, 239 U. S. 576–581, 60 L. Ed. 448–451; *Central Vermont R. Co. v. White*, 238 U. S. 507–512, 59 L. Ed. 1433–1437; *Beck v. Baltimore & O. R. Co., supra*, 446.

The law further is that the question of assumed risk is ordinarily one for the jury, under the instructions

of the court. *City of La Salle v. Kostka, supra,* 136; *Brant v. Chicago & A. R. Co., supra; Sinclair Co. v. Waddill, supra,* 20.

"Where a master confers authority upon one of his employees to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employee, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master, and not a mere fellow-servant; and all commands given by him within the scope of his authority are in law the commands of the master." *City of La Salle v. Kostka, supra,* citing: *Chicago & A. R. Co. v. May,* 108 Ill. 288; *Wenona Coal Co. v. Holmquist,* 152 Ill. 581; *Mobile & O. R. Co. v. Godfrey,* 155 Ill. 78; *Fraser & Chalmers v. Schroeder,* 163 Ill. 459.

It is also the law that the duty of the master to use reasonable diligence in seeing that the place where the work of his servant is to be performed is safe for that service, extends not only to such risks as are known to him, but to such as he ought to know in the exercise of due diligence. *Consolidated Coal Co. of St. Louis v. Haenni,* 146 Ill. 614; *Illinois Steel Co. v. Schymanowski,* 162 Ill. 447–456; *Chicago Edison Co. v. Moren,* 185 Ill. 571. In the latter case the court at page 575 says: "In *Illinois Steel Co. v. Schymanowski,* 162 Ill. 447, it was held that a servant ordered by the master to perform a particular work has the right to assume that he will not be exposed to unnecessary perils and to rest upon the implied assurance that there is no danger. In *Chicago Anderson Pressed Brick Co. v. Sobkowiak,* 148 Ill. 573, it was held that where an act was performed by a servant in obedience to a command from one having authority, and the performance of the act is attended with a degree of danger, it is not required that such servant shall balance the degree of danger and decide with absolute certainty whether he

must do the act or refrain from it; and his knowledge of the attendant danger will not defeat this right of recovery, if, in obeying the command of the master, he acted with that degree of prudence that an ordinarily prudent man would have used under the circumstances.''

The removal of said concrete was not in charge of appellee, to be handled as he deemed best. He was working under the direct order and control of said foreman, who, under the authorities above cited, was a direct representative of appellant. In this connection, appellee testified:

''About 3 o'clock in the afternoon of that day I came back with the push car where I had been to the end of the switch to dump a load which was about a quarter of a mile. The hole I got smashed in was at the east end of the retaining wall. The foreman, Homfeld, told Martin to get out of the hole and let me get in. I said, 'John, is it safe to go in there?' John said, 'Hell, yes, it's safe to go in there, Whittaker (superintendent) said so.' I went down. . . . The foreman was around there close. . . . There was dirt along there and the dirt wall was perpendicular. At that particular place the concrete had been taken out that day. I don't know of anything that was done with reference to bracing or holding up the roadbed and I was there all the time. I was in the hole probably ten minutes. I dug a hole under the end of this rock and the embankment rolled in on me and I was buried under it.''

Appellee was corroborated by Gus Kinsey with reference to the condition of said excavation just prior to the injury. The record further shows that engines were going in and out over said switch tracks while said work was being carried on, one engine having passed over said tracks a few minutes before the injury in question. Appellee testified that he did not know of the engines having passed over the tracks on that day, as

he had been away at different times, hauling rock, etc.

Under the above authorities, it was a question of fact for the jury as to whether appellant was guilty of negligence, in failing to protect its employees from the danger of a cave-in of said embankment, in running engines over said embankment in its then condition, and in ordering appellee into said trench at the time in question. See *City of LaSalle v. Kostka, supra.* In *Sinclair Co. v. Waddill, supra,* the court at page 20, in discussing a question of this character, says:

"It was a question of fact for the jury to determine whether, under all of the evidence, the structure gave way because it had been imprudently located, negligently planned, constructed of insufficient material, or hurriedly and recklessly overloaded, or whether the defects therein were occasioned by or through the negligence or lack of proper workmanship on the part of the appellee. The appellee had neither experience in such work nor knowledge of what would be required of the structure, and his actions were those of a servant in obedience to the commands of the master. The testimony so far tended to show the injury arose from the negligence of the foreman of the appellant company as to make that a question of fact for the jury,—not of law for the court."

The court did not err in denying said motion.

It is next insisted that the court should have directed a verdict for appellant at the close of all the evidence, based on said release. The execution of the release was put in issue by the replication of appellee. Its execution was therefore a question of fact for the jury. The court did not err in refusing to direct a verdict.

It is next insisted that the court erred in giving appellee's first, second and fourth instructions.

Appellee's first instruction is abstract in form, but it states a correct principle of law, applicable to the facts in the case. While it would not have been error

to have refused it, there was no serious error in the giving of said instruction.

Appellee's second instruction is as follows:

"The Court instructs the jury that if you believe from the preponderance of the evidence that at the time the instrument of release introduced in evidence by the defendant was obtained from the plaintiff that the plaintiff was not in possession of his mental faculties to such an extent that he did not know what he was doing, and that he did not know that he was executing and signing a release to the defendant railway company; and if you believe from the preponderance of the evidence that such mental condition of the plaintiff was apparent at the time, and if you further believe from the preponderance of the evidence that on account of such facts and circumstances the execution of the release was obtained by fraud and circumvention, the Court instructs that in such state of the proof you should find that the instrument of release is void, and that it was or is not necessary for the plaintiff to return the consideration."

It is a well-settled principle of law that a party to a contract, who seeks to rescind it on account of fraud practiced on him, must tender back what he has received under the contract, so that the other party may be placed in the same position in which he was before the contract was entered into. *Huiller v. Ryan*, 306 Ill. 88, citing *Brady v. Cole*, 164 Ill. 116; *Hansen v. Gavin*, 280 Ill. 354; *Wenegar v. Bollenbach*, 180 Ill. 222.

Counsel for appellee, while admitting the correctness of the above proposition, insist that, on the facts disclosed by the record, that rule would not apply, and that he would not be barred from maintaining his suit, notwithstanding his failure to return the consideration received at the time said release was executed.

The fraud which will obviate the necessity of the return of money paid in settlement for a release is the fraud of the party procuring the release, and must be an actual, intentional fraud. *Bowen v. Schuler,* 41 Ill. 192–195; *Wheeler v. Mather,* 56 Ill. 241; *Wolf v. Dietzsch,* 75 Ill. 205–210; *Pawnee Coal Co. v. Royce,* 184 Ill. 402–411; *Litchfield & M. R. Co. v. Shuler,* 134 Ill. App. 615.

In *Pawnee Coal Co. v. Royce, supra,* the court at page 412 says:

"Where there is a disaffirmance of the contract because of fraud, the injured party may, in some cases, bring his action without repaying or offering to repay the money received on the fraudulent contract. In such case the money is retained, not as a part of the consideration of a contract he denies, but as a part indemnity for the fraud perpetrated upon him. . . . But the case is wholly different where he seeks to avoid a contract solely because of a temporary incapacity when he made it,—an incapacity of which he gave no sign and which was unknown to the other party to the contract. His conduct in keeping the money, . . . with knowledge as to where it came from, . . . is only consistent with an intention to affirm the contract. It is conclusive evidence of affirmance."

It is also necessary that a party to a contract, desiring to rescind it for fraud, must make his election to do so promptly after learning of the fraud. *Greenwood v. Fenn,* 136 Ill. 146; *Hansen v. Gavin, supra; Huiller v. Ryan, supra,* 94.

A party "should not be permitted to speculate with reference to the possible outcome of his suit for damages." *Paulen v. Springfield Consolidated Ry. Co.,* 166 Ill. App. 382–384.

While appellee's second replication, after reciting his mental condition, charges "that on account thereof, such alleged release, as referred to in the plea of the defendant, in the execution thereof, was obtained by

fraud and circumvention," this does not charge actual, intentional fraud on the part of appellant in the procuring of said release.

In *Litchfield & M. R. Co. v. Shuler, supra,* the court, in discussing a question of this character, at page 617 says:

"The third instruction given for appellee, which was in the following words: 'The court instructs the jury that if you further believe from the evidence that the release in question was obtained by fraud and circumvention, then and in that case the plaintiff would not have to offer or pay back to defendant the $1,000 paid the deceased before bringing her suit, and you will so regard the law in making up your verdict,' was misleading as there was no evidence in the case tending to show fraud of the character contemplated by the instruction. The fraud contemplated by the instruction is that which relates to obtaining the release, which means that there was a release and that Shuler executed it, but that his signature thereto was obtained by unfair or fraudulent means."

On page 619, the court further says: "Mere incapacity of itself would not render the contract void, but merely voidable, in which event an offer to return the money paid would be essential to a recovery."

Both at law and in equity, it is essential that the facts and circumstances which constitute fraud should be set out clearly and concisely and with sufficient particularity to apprise the opposite party of what he is called upon to answer. *Smith v. Brittenham,* 98 Ill. 188–199; *Murphy v. Murphy,* 189 Ill. 360–365; *Bouxsein v. First Nat. Bank of Granville,* 292 Ill. 500–503.

The facts on which a charge of fraud is based must be alleged in the pleadings, and must be supported by the evidence. Allegations without proof, or proof without allegations, are not sufficient. *Leahy v. Nolan,* 261 Ill. 219–221; *Houlihan v. Morrissey,* 270 Ill. 66–70; *Fisher v. Burks,* 274 Ill. 363–367.

On the question as to whether appellee's condition was such that it was apparent to all reasonable persons that he was temporarily incapacitated and mentally not in a condition to understand the business in which he was engaged, it is pertinent to consider the letter written to Mr. Gillespie, appellee's then attorney, by his wife, son and daughter, prior to the execution of said release, which states:

"Dear Sir:

"In Re: Frank Worthey vs The Peoria & Eastern Railway Company, for injuries received Urbana, Illinois, on the 12th day of May, 1926.

"The undersigned, the wife and daughter and son of the above claimant, Frank Worthey, instructs you to settle the above claim for cash and as per contract with said Company for the sum of $2500.00 and $100.00 to be paid on bill for operation to be hereafter performed on bladder, etc., of claimant"; that all of said persons were present at the home when said release was signed; that appellee's wife signed the following statement, attached to said release: "This release was read and signed by the said Frank Worthey in our presence at LeRoy, Illinois, on the 30th day of December, 1926"; that, upon the face of said release, appellee wrote his initials after the interlineation "and all other parties in interest," and also wrote the words "I have Read and Understand this Release," the figures for the amount received by him, and the date, and that he signed the release and indorsed the draft given him by the claim agent at that time.

While not expressing any opinion as to the weight of this evidence, we hold that, on the record, it was eminently necessary that the jury be accurately instructed as to what constitutes the fraud which would relieve appellee from returning the consideration received by him. Said consideration, if not adequate, was substantial, especially in view of the fact that appellant had, prior to the execution of said release,

expended over $2,600 in hospital and doctor bills, etc., growing out of appellee's injury. The court committed reversible error in giving appellee's second instruction.

Appellee's fourth instruction is of a similar character, except that it did not require the jury to find that appellee's condition was apparent, and did not present the proposition as to appellee having the right to retain the consideration which he had received.

As there was no instruction in the record explaining the meaning of the term "fraud and circumvention," used in said instructions, it was also error to give the same without informing the jury as to what constituted, in law, fraud and circumvention.

It is also insisted that there was no sufficient proof that appellee, at the time of his injury, was engaged in interstate commerce. This point is not well taken, as the evidence is clearly sufficient upon which to base a verdict so finding.

For the reasons above set forth, the judgment of the trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*